### DALLAS RAPID TRANSIT RAILWAY COMPANY V. BENJAMIN ELLIOTT ET AL.

#### No. 309.

1. **Injuries Resulting in Death — Parties — Apportionment of Damages.** Suit brought by the husband and an adult son in their own right, and by the husband as next friend of certain grandchildren of the deceased, against a railway company for damages for injuries resulting in death inflicted upon the wife through negligence of its servants in the conduct of its business.   *Held:*

1. Under our statute, article 2904, which provides, that such "action shall be for the sole and exclusive benefit of the surviving husband, wife, children, and parents of the person whose death shall have been so caused," the grandchildren were not entitled to recover, and were neither necessary nor proper parties to the suit, and the court did not err in eliminating them in the charge to the jury.

2. The son was entitled to bring the action, and was a regular party plaintiff in the suit.   Being an adult, he had the right to waive his interest in the recovery, which he did after the evidence was all in, and before the argument, by the announcement of his counsel that a verdict was asked alone for the husband.   The court did not err in withdrawing his claim from the jury.

3. The railway company has no right to complain of the action of the court, as the son's right to a recovery was settled by the verdict and judgment, and he is bound thereby, even though he may have yielded his rights under a mistake as to the law governing them.

**2. Negligence—Electric Cars—Fact Case.**—The injuries were inflicted upon deceased by an electric car at the crossing of two public streets in the city of Dallas. See opinion for facts held to constitute negligence on the part of the motorman in charge of the car, who was not keeping a vigilant outlook ahead.

**3. Same—Contributory Negligence.**—The conduct of persons based upon the idea that the usual safeguards will be observed by those in charge of such cars, and which becomes hazardous only by the operator's neglecting to observe these precautions, should not be treated as contributory negligence, defeating the right of recovery for injuries inflicted through such negligence of the servants of the railway company.

APPEAL from Dallas County. Tried below before Hon. R. E. BURKE.

*Alexander & Clark,* for appellant.—1. The court erred in its charge, and to the prejudice of defendant, in that it directed the jury in case they should find for the plaintiff, Benjamin Elliott, they should allow him the worth of the services of the deceased, because said charge did not direct the jury in their consideration of the other plaintiffs, and at the same time was uncertain, because in certain paragraphs it seemed to contemplate that the jury should consider the claims of the other plaintiffs. Rev. Stats., arts. 2903, 2904, 2908; Railway v. Culberson, 68 Texas, 666; Railway v. La Gierse, 51 Texas, 199; Railway v. Bradford, 45 Texas, 171; Railway v. Moore, 49 Texas, 46.

2. The verdict is uncertain and incomplete, and one upon which no proper judgment can be rendered, for the reason that it contains no finding as to any of the plaintiffs other than Benjamin Elliott.

3. The court erred in rendering judgment finally disposing of the case as to plaintiffs, Jerome Wilder and the minor children of Benjamin Elliott, because under the verdict the court was not authorized to pronounce such a judgment, and the same is liable to be vacated in an action by said Wilder and the minor children of Benjamin Elliott, and defendant is in jeopardy thereof, and will remain so for years to come. McCue v. Klien, 60 Texas, 168; Railway v. Nixon, 52 Texas, 19; Handel v. Elliott, 60 Texas, 145.

*M. L. Dye,* for appellees.—A defendant sued by two plaintiffs can not complain because judgment against him is rendered in favor of only one of the plaintiffs, when it should have been in favor of both, since the judgment is conclusive on both plaintiffs, so that the defendant can not be sued again by the unsuccessful plaintiff. Railway v. Smith (Texas), 16 S. W. Rep., 803; Am. Dig., 2528; 27 Texas, 564, 565.

The defendant in this case can not have been prejudiced by the rendition of a judgment in its favor against such other plaintiffs, and the

error, if any, is not one of which the defendant can complain. Saffold v. Navarro, 15 Texas, 77.

FINLEY, ASSOCIATE JUSTICE.—This is a suit instituted by Benjamin Elliott, the husband, and Jerome Wilder, the son, of Lucy Elliott, deceased, in their own right, and by Benjamin Elliott as next friend of certain grandchildren of said Lucy Elliott, deceased, in case they should be deemed necessary parties to the suit. The cause of action is alleged against the Dallas Rapid Transit Railway Company, and is for damages for injuries, resulting in death, inflicted upon said Lucy Elliott by the railway company, through negligence of its servants in the conduct of its business. The defense made was the general issue of not guilty, and special plea of contributory negligence. The case was tried and resulted in a verdict in favor of Benjamin Elliott for $1000, and upon this verdict judgment was rendered in favor of Benjamin Elliott for that sum, and costs of suit, against the railway company; and in favor of the railway company against the other parties plaintiff. Motion for new trial was made and overruled, notice of appeal given, errors assigned, and the cause brought here for review by the railway company.

The facts which were proven upon the trial we find to be substantially as follows:

1. In July, 1891, Benjamin Elliott and Lucy Elliott were husband and wife, and lived in Dallas, Texas. Jerome Wilder, an adult 30 years of age, was the only living child of Lucy Elliott, and her parents were both dead. She had grandchildren living; they were the children of Benjamin Elliott, Jr., deceased, and represented in this suit by Benjamin Elliott, the grandfather, as their next friend.

2. On July 11, 1891, the Dallas Rapid Transit Railway Company operated electric street cars in the city of Dallas, for the transportation of passengers from point to point in said city. Upon Commerce street, one of the principal streets and thoroughfares of the city, it had a double track, and ran its cars upon both of these tracks. Commerce street runs east and west.

3. The ordinances of the city of Dallas regulating the operation of street railways contained, among others, the following provision: "The conductor or driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, whether on the track or moving towards it; and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

4. Lucy Elliott was 48 years old, and her husband 58 years old at the time of Lucy's death. They were colored people, lived about 100 yards south of Commerce street, and Lucy washed and ironed clothes for the public. Late in the afternoon of July 11, 1891, about dark,

Lucy took a small bundle of clothes which she had washed and started to carry them to the owner, who lived a short distance north of Commerce street, which she had to cross to deliver clothes. She undertook to cross Commerce street at the point where Dove street intersects it at right angles, and was run over by appellant's car running east on Commerce street, and killed:

5. At the time Lucy started across the street, a car running west on Commerce street was nearing the place of crossing, ringing the bell and making much noise, so that it attracted the attention of other persons crossing the street about the same time. The car running east was not ringing the bell or making any unusual noise so as to attract attention, though it was about the same distance as the other car from the point where Lucy was crossing, and the cars passed each other at about this point. It ran along so quietly that other persons crossing the street did not observe its approach, and were attracted alone by the noise of the car going west, and avoided getting in its way, as did Lucy Elliott. The motorman, or conductor, in charge of the car going east was not keeping a watchout, but was, at the time of nearing this point, talking to some person in the car, and had his face turned in the opposite direction from that in which his car was running, and for this reason did not see Lucy Elliott until his car was so near upon her that he could not stop it until she was under the wheels, though he tried to stop the car as soon as he saw her. The car was running rapidly.

6. The conductor of the car going east was guilty of negligence in rapidly running his car along the street, without keeping a constant and vigilant watchout, as persons were liable at any point and at any moment to cross the street; and this negligence was the proximate cause of the injury and death of Lucy Elliott.

7. The evidence does not show that Lucy Elliott was guilty of negligence in undertaking to cross the street at the time and in the manner she did, but justifies the conclusion that her conduct was such as might be expected of an ordinarily prudent person under similar circumstances.

8. The services and companionship of Lucy were proven to be of greater value to her husband than the amount of the recovery.

There is some conflict in the evidence as to negligence, both on the part of the motorman and Lucy Elliott, and we have resolved the conflict in support of the verdict of the jury, and, we think, in accordance with analysis and interpretation of the evidence.

*Opinion.*—The court in charging the jury only submitted the right of Benjamin Elliott, the husband, to recover damages, thus eliminating the claim of the other plaintiff and beneficiaries; and in response to the charge the jury returned a verdict only for Benjamin Elliott. The appellant attacks the charge of the court as erroneous, because it took

from the jury the right to apportion the damages among those entitled to recover; and the judgment, because the verdict in favor of Benjamin Elliott alone did not authorize the rendition of a judgment in his favor against the railway company, and in favor of the railway company against the other parties, shown by the pleadings to be equally entitled to recover.

The grandchildren of Lucy Elliott were not entitled to recover under our statute, and were therefore neither necessary nor proper parties to the suit. The statute provides, that "the action shall be for the sole and exclusive benefit of the surviving husband, wife, children, and parents of the person whose death shall have been so caused," etc. Sayles' Civ. Stats., art. 2904. It was not therefore error in the court to eliminate them in the charge to the jury. Jerome Wilder was entitled, under the statute, to bring the action, he being a child of Lucy Elliott; and article 2909 provides for an apportionment by the jury in their verdict of the damages recovered among those entitled to the benefit of the action. Jerome Wilder was a regular party plaintiff in the suit, and it appears by bill of exceptions, that after all the evidence was in, and before the argument, it was announced by his counsel that a verdict was asked alone for Benjamin Elliott, as there was no evidence showing that any other person suffered damage by the death of Lucy Elliott. Jerome Wilder was an adult, and had the right to waive his interest in the recovery; and as he did so through his counsel, the court did not err in withdrawing his claim from the jury. He seems satisfied with the judgment; he did not complain in the court below, and asks no relief in this court. The railway company certainly has no right to complain of the action of the court. Wilder's right to a recovery was involved in the suit, settled and determined by the verdict and judgment, and he is bound by that determination, even though he may have yielded his rights under a mistake as to the law governing them. Had he not been a regular party to the suit, the suit being brought by another for his benefit, or had he been a minor, represented by a guardian, it might then be contended that he was not bound by the judgment rendered under such circumstances, and that therefore the railway company had reason to complain. Such is not this case. The verdict and judgment rendered concludes all parties entitled under the statute to recover for the death of Lucy Elliott, and the railway company can have no possible legal interest in the question whether the damages recovered were legally apportioned.

It is also asserted by assignment of error, that the verdict is contrary to the evidence, in that no negligence on the part of the defendant was shown, while the contributory negligence of the deceased was manifest.

It was shown that the motorman in charge of the car was running the car rapidly down one of the principal streets of the city, while persons

were liable at any moment, and at any point, to cross the street. In the face of this danger, and at the time of this accident, he was talking to some one in the car, and had his face turned to the opposite direction from that in which the car was running. We can not agree with counsel that this was not negligence. Instead of looking behind and talking to passengers in the car, he should have kept a vigilant outlook for danger ahead, and preserved such control over the speed of the car as would have enabled him to stop it before running over any one. He should have seen Lucy Elliott and stopped the car before rushing it upon her; and if he had been faithfully performing his duty, he no doubt would have seen her in time to have stopped the car, or at least to have given her notice of its approach, and her death would not have resulted. It was his duty to see what was ahead of the car, and it was negligence in him not to see it.

Was the deceased guilty of contributory negligence? She was not a trespasser; the street belongs to the public, and she had the right to cross it. She is dead, and we can not learn from her the circumstances under which she acted. The evidence shows that others were crossing the street at the same time, and about the same place; that they were attracted by the noise of a west-bound car, and avoided contact with it, as did the deceased, but were not aware of the rapid, quiet approach of the east-bound car until about the time it ran upon Lucy Elliott. It gave no signal of its approach. People of cities are guided largely in their manner of crossing streets upon which cars are run by the known regulations and customs governing the operation of such railways. The electric street car is usually provided with a bell, or gong, to be sounded as a warning of its approach. A man is placed at the front of the car to keep a vigilant watch ahead, to give warning of its approach, keep his car under control, and stop it when there is apparent danger ahead.

The actions of people in crossing such streets must be judged of in the light of such regulations and customs in determining the question of contributory negligence. Some persons can rely with more safety upon hearing than sight, and knowing the regulations and customs of such railways, they listen for the ringing of the bell, or sound of the gong to govern their actions in crossing the streets. They have the right to expect of the operatives of such dangerous machinery, along the streets of a populous city, care in proportion to the danger of the undertaking. The conduct of persons, based upon the idea that the usual safeguard will be observed by those in charge of such cars, and which becomes hazardous only by the operatives neglecting to observe these precautions, should not be treated as contributory negligence, defeating the right of recovery for injuries inflicted through such negligence of the servants of the railway company.

The question of contributory negligence on the part of the deceased, it was particularly the province of the jury to settle; and we are unable to say that the evidence did not warrant the conclusion that Lucy Elliott was not guilty of such negligence.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered April 11, 1894.