SAN ANTONIO TRACTION COMPANY v. JAMES V. UPSON.

Decided December 17, 1902.

**1.—Negligence—Pleading Several Grounds of.**

Where plaintiff, struck by a street car while crossing the track, alleged in his petition to recover for the injury that defendant negligently ran its car at an unlawful rate of speed, and also that it negligently omitted to stop its car or give warning, and that "by reason of said negligence of the defendant" he was injured, he was entitled to recover upon proof of either of the grounds of negligence.

**2.—Same—Degree of Negligence—Street Cars.**

That the pleading characterized both acts of negligence as gross did not preclude plaintiff from recovering upon proof of ordinary negligence.

**3.—Same—Evidence—City Ordinances—Rate of Speed.**

The city ordinance regulating the rate of speed of street cars was competent evidence to show that the car was going at an unlawful rate of speed.

**4.—Same—Evidence—Account Paid for Repairs.**

Testimony by plaintiff that his buggy was badly smashed by the collision with the street car, and that his bill for its repairing was $25, there being no cross-examination on this point, warranted a charge permitting the jury to consider, in estimating the damage, the amount, if any, expended by plaintiff for repairing the buggy.

**5.—Street Railway—Use of Streets.**

The grant to a street car company of a franchise right or privilege to use the street does not infringe the right of the general public to its use upon terms of public equality with the company.

**6.—Same—Contributory Negligence—Crossing Ahead of Car.**

A person crossing a street in front and in view of an approaching street car may assume that the car will not be run at an excessive speed, and that, if necessary to avoid a collision, and it can be done, the car will be stopped; and if, under all the circumstances it is consistent with ordinary prudence for him to attempt to cross, an error in judgment as to his having time to cross in safety will not amount to contributory negligence as a matter of law.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Houston Bros.* and *R. J. Boyle,* for appellant.

*Nat B. Jones, C. K. Breneman,* and *Jas. V. Upson,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against appellant to recover $5000 damages for injuries sustained to his person and his buggy by reason of a collision with one of the company's street cars occasioned by the negligence of the company.

Appellee alleged in his petition that at the time the accident occurred, the city council of the city of San Antonio "had enacted an ordinance fixing the rate of speed which defendant's cars should not exceed, to wit, ten miles per hour within a radius of one mile from the center of the city of San Antonio; that said ordinance was reasonable and in full force and effect; that the tracks of defendant's railway were and are along

the west side of Alamo plaza, a public square and highway of said city, which is within a radius of one mile from its center.

"That on the 19th day of February, 1901, about 4:30 o'clock on the afternoon of that day, plaintiff was traveling in a buggy drawn by a horse along Alamo plaza, and when he reached and was crossing the tracks of defendant thereon, as he had right to do, the defendant by and through its agents and servants, with gross and willful negligence caused one of its cars to pass rapidly over the tracks of its said road at a greater rate of speed than ten miles an hour, to wit, at about twenty or more miles per hour, toward the buggy in which plaintiff was traveling as aforesaid, and negligently, carelessly and willfully omitted, while said car was so approaching plaintiff, to check or attempt to check or give any signal by gong or otherwise, although plaintiff was in plain view and seen by the motorman of defendant in charge of said car, and by reason of said negligence of the defendant, and without fault or negligence of the plaintiff, the said car ran upon and struck the buggy in which plaintiff was traveling as aforesaid, and broke the wheels, bed, dash and shafts thereof, and also struck plaintiff upon the head with great force, knocking him senseless, cutting his head and face and bruising his arms and leg, and causing him great loss of blood and much pain and suffering."

These allegations are followed with proper averments of the damages alleged to have been sustained by the negligence charged.

The appellant answered by a plea of not guilty, and plead that plaintiff was guilty of contributory negligence in that he recklessly and negligently drove in front of and into collision with the street car. The case was tried before a jury, and resulted in a judgment in favor of the plaintiff for $750, from which this appeal is prosecuted.

*Conclusions of Fact.*—The evidence is reasonably sufficient to sustain the following findings: (1) That on the 19th day of February, 1901, while one of appellant's street cars was being propelled along Alamo plaza in the city of San Antonio at a rapid speed, it came in collision with appellee's buggy in which he was then riding, broke and damaged the buggy, and inflicted painful and serious injuries to appellee's person; (2) that it was negligence on the part of appellant, through its motorman in charge of said car, to run it along said plaza, a public thoroughfare, at the rapid speed it was propelled when the collision occurred; (3) that such negligence was the proximate cause of the damage to appellee's buggy and of the personal injuries sustained by him; (4) that appellee was not guilty of any negligence proximately contributing to his damage and injuries; and (5) that the damages sustained by appellee by reason of the negligence of appellant are $750, the amount assessed by the jury.

Of these conclusions, the fourth is the only one we have had any difficulty in reaching. The evidence upon which it rests is conflicting; and viewing it in the light most favorable to the appellee, which we must do in deference to the verdict, the writer is not without doubt as to the cor-

rectness of the conclusion. The evidence upon which we base such conclusion will, to some extent, be stated in connection with our conclusions of law upon the assignment regarding the question of contributory negligence.

*Conclusions of Law.*—1. The appellee offered a portion of section 15, chapter 49, of Revised Criminal Ordinances of 1899 of the city of San Antonio, which is as follows: "Hereafter no electric car shall be propelled or operated within the limits of the city of San Antonio, or run at a greater rate of speed than ten miles an hour within a radius of one mile from the center of the city." The appellant objected to its introduction in evidence "because the same was not based upon any pleading in the case, and immaterial, irrelevant and not pertinent to any issue." The objections were overruled, and the ordinance read in evidence. A bill of exceptions was reserved to the ruling, which is made the basis of appellant's first assignment of error.

The evidence shows that the Alamo plaza, where the collision occurred, is a little less than one-half mile from the center of the city. There was also evidence strongly tending to show that the speed of the car was eighteen or twenty miles an hour when the collision occurred.

Under this assignment it is contended by appellant that, though it is alleged in the pleadings the car was being operated at a speed in excess of the rate prescribed by the ordinance, there is no allegation that the operation of the car at such speed in any way caused or contributed to appellee's injury.

It may be seen from the allegations in appellee's petition, copied in our statement of the nature of the case, that he bases his action upon appellant's negligence in running the car rapidly over the track at a speed in excess of ten miles an hour, and upon the negligence of the motorman in charge of the car while appellee was in plain view of him, in failing to check its speed or give any signal of its approach. The action is no more predicated upon appellant's motorman's negligence in failing, after seeing appellee, to check the car or signal its approach, than it is upon appellant's negligence in running the car at such rapid and excessive rate of speed. To make out his case, the appellee was not required to prove both grounds of negligence. Proof of either was sufficient to warrant his recovery, if not defeated by contributory negligence. It is true that both acts of negligence averred are characterized by the pleader as gross, but this did not preclude appellee from recovering upon the proof of ordinary negligence, as there would be merely a failure to prove a part of his allegation if gross negligence were not established. Railway v. Cook, 67 S. W. Rep., 383. There was specific allegations that the speed of the car was in excess of that prescribed by ordinance, and upon the issue as to whether its speed at the place where the collision occurred was excessive, the ordinance was competent evidence. Barrett v. Smith, 128 N. Y., 607, 28 N. E. Rep., 23.

2. The objection made under the second assignment of error to the

first paragraph of the court's charge is predicated upon the false assumption that the only negligence charged in the petition is the willful omission of the car operator to check the speed of the car or warn plaintiff after seeing him on the track, and is therefore without merit. The same may be said as to the third and fourth assignments.

3. The seventh paragraph of the charge is not obnoxious to the objections that there was no evidence authorizing the jury in estimating the damages to consider any amount necessarily expended by appellee in repairing the damage done to his buggy by the collision. The uncontradicted evidence shows that the vehicle was badly smashed and broken, and appellee testified that his bill for fixing it was $26; and the record indicates that such bill itself was offered in evidence. This made a prima facie case as to such item of damages, and as the appellee was not cross-examined as to it, nor any evidence in rebuttal offered by appellant, we think the court properly instructed the jury to consider, in estimating the damages, the reasonable amount, if any, necessarily expended by plaintiff in repairing damage done to his buggy by said collision.

4. Under the sixth and last assignment of error it is urged that the verdict finds no support from the evidence, in that it shows appellee's injuries were the result of his own negligence in driving in front of a moving car so close that it was impossible for the motorman in charge to stop and avoid the collision.

This, as we have intimated, raises the only serious question in the case—does the evidence show that appellee was guilty of contributory negligence as a matter of law? If it can not be said that the evidence is such that men of ordinary intelligence could reach no other conclusion than that appellee's injuries resulted from his contributory negligence, the case should not have gone to the jury except upon a peremptory instruction to find for the defendant. As appellant asked no such charge, and the court submitted the issue to be determined by the jury from the evidence, it may be argued that counsel for appellant, as well as the trial judge, did not deem the evidence such as to show contributory negligence as a matter of law, but concluded it a question for the jury. But whatever may have been the views of the trial court or of counsel upon the question at the time the case was tried by the jury, it is for this court to pass upon it in reaching its conclusions of fact.

We will now recite the evidence and announce the principles of law which influenced and governed us in arriving at the conclusion that appellee was not guilty of any negligence proximately contributing to his damages and injuries.

Alamo plaza is a public thoroughfare within less than one-half mile from the center of the city of San Antonio; the appellant maintains along it two street railway tracks, lying parallel, within about five feet of each other, and running in a general direction north and south, along which is operated its street cars propelled by electricity. On the eastern side of the plaza is situated Alamo park, which is not open to travelers except pedestrians. Next to the curbstone separating this park from the

portion of the plaza used as a street, hacks are usually standing in a line parallel with appellant's railway tracks, leaving barely room for a vehicle to pass between the park and the nearest rail thereto. Crockett street intersects the plaza at its western side opposite the park, and where the hacks stand. The Grand Opera house is on the west side of and fronts the plaza just north of the point of intersection with Crockett street. The car that collided with appellee's buggy was on the west track, and running south. Just before the collision appellee was driving north on the west side of the plaza.

The appellee's testimony as to the accident is as follows: "On the afternoon of February 19, 1901, I was crossing what is known as Alamo plaza, which is within a radius of a mile from the center of the city. As I reached a point opposite the Reuter building, I noticed a number of hacks west of the park on Alamo plaza. One of these turned from the park and obstructed my view looking north, in which direction I was going. I also noticed a car approaching at the time opposite the Grand Opera house. It looked to be about seventy-five or one hundred feet away, and as the hack turned into the driveway, I thought I could cross the track ahead of the car. I crossed the track at about right angles. As I was in the act of crossing, the car struck the buggy about the center. The distance between the east track and the side of the park was about sufficient for one to drive along. There was a man in front of the car, which was fully seventy-five feet away. My buggy was across the second track. The car struck the front wheel, breaking the shafts, wheel and axle. The horse was not hurt. As the car was coming towards me, I am unable to make an estimate of its speed. I think I could have driven across with safety had the car been going at the ordinary rate of speed. The car was coming on the west track. There is a space next the curbing, then the east track, then the space between the two tracks. The hack was turned out directly across the space with the horses standing on the east track—it was impossible to get through. The carriage was fifty or seventy-five feet away from me, and had just turned out of line. I was afraid of a collision with the car and hack, and to avoid the collision that might happen, I crossed over. The car was coming toward me, and I knew that the hack could not cross over ahead of the car, and the three of us could not pass there. In my judgment it was best for me to get out of that place. That was my object in crossing over. I thought I had ample time, judging from the distance the car was from me."

Appellee's testimony as to the distance the car was from him, when he turned to cross, is corroborated by that of two other witnesses to the accident. Other witnesses to it, however, testified that it was right at him when he attempted to cross in front of it.

As to the speed of the car, a witness testified that it was at the rate of eighteen to twenty miles per hour; another, that it looked like it was "going all the way at once—just a-whizzing down grade;" another, that it was going so fast the motorman "could not stop it at all." One witness testified that when the car struck the buggy it knocked it from 110

to 120 feet. Witnesses for appellant, however, testified that its speed was not greater than six or seven miles per hour. This is the evidence most favorable to appellee upon the issue under consideration.

In Railway v. Renken, 15 Texas Civ. App., 229, this court, speaking through Mr. Justice Fly, says: "Streets, as public highways, are set apart for public use, and no person or corporation can receive the right or authority to have the exclusive or paramount use or control over such street or highway, or any part of it. The privilege of crossing them granted to street railways does not infringe the right of the general public to their use on terms of perfect equality with those to whom the privilege of use has been granted.

"The franchise to lay its rails upon the bed of the public street gives to the company no right to the exclusive use of that street, and in no respect exempts it from an imperative obligation to exercise due and proper care to avoid injuring persons who have an equal right to use the same thoroughfare. It is bound to take notice of, recognize, and respect the rights of any pedestrian or other traveler; and if by adopting a motive power which has increased the speed of its cars it has thereby increased, as common observation demonstrates, the risks and hazards of accidents to others, it must, as a reciprocal duty, enlarge to a commensurate extent the degree of vigilance and care necessary to avoid injuries which its own appliances have made more imminent." Thatcher v. Traction Co., 166 Pa., 66; Cook v. Traction Co., 80 Md., 151, 31 Atl. Rep., 327.

In Railway v. Block, 55 N. J. Law, 605, 27 Atl. Rep., 1067, it is held that, "(2) the rule requiring one exercising his lawful rights in a place where the exercise of lawful rights by others may put him in peril, to use such precaution and care for his safety as a reasonably prudent man would use under the circumstances, is the measure of duty for one who crosses a public highway. He must use his powers of observation to discover approaching vehicles, and his judgment how and when to cross without collision, but his observation need not extend beyond the distance within which vehicles moving at lawful speed would endanger him. (3) Street cars propelled by electricity and running along land burdened only with the easements of a public highway, can not be run at a rate of speed incompatible with the lawful and customary use of the highway by others with reasonable safety."

In Kennedy v. Railway, 52 N. Y. Supp., 551, the court says: "The cable car had no absolute right to the exclusive use of the street. Pedestrians and vehicles have some rights which even cable cars are bound to respect. They have a right to cross the street even though a cable car may be in sight. If not, then the city would be divided into as many zones as there are lines of power cars running the length of the island, and nobody would ever get across. It was not incumbent upon the driver of this vehicle to wait until no cable car was in sight before he attempted to cross. He had a right to cross the track when

there was a reasonable opportunity to do so, even though it required the cable car to slacken its speed in order that it might not upset his vehicle. The rights of drivers of vehicles and of cable cars are reciprocal, and the gripman of a cable car is bound to use as much diligence to avoid running into a vehicle which is crossing its track, as the driver of a vehicle is to avoid running into a cable car which may be crossing its path. It seems to be assumed upon the part of the defendant that, unless a vehicle can certainly entirely clear a cable car approaching at a high rate of speed, its driver has no right to attempt to cross, and that the car is in no case bound to slacken its speed. We know of no such rule of the road."

"A mere error of judgment does not necessarily amount to carelessness. If the plaintiff took reasonable care, and then made a mistake as to the safest course to pursue in crossing the street, he was not guilty of contributory negligence for that reason. The place was a public street, and plaintiff had a right to go where he chose; and no matter how many cars were in the street, he had a right to select any point to go across, but was bound to exercise care." McClane v. Railway, 116 N. Y., 459, 22 N. E. Rep., 1062.

"Unless unusual speed is specially permitted by law, the speed of street cars ought to be no greater than is reasonably consistent with the customary use of the road by the public, in safety (Shearm. & Redf., sec. 484a) ; and travelers may assume that street cars will not run at excessive speed, and that they may properly walk, ride or drive across or even along the track in full view of an approaching street car, if under all the circumstances it is consistent with ordinary prudence to do so." Shearm. & Redf. on Neg., sec. 485c; Railway v. Elliott, 7 Texas Civ. App., 216, 26 S. W. Rep., 455.

Thus it is seen that under the law the appellee had a right to assume and act upon the assumption that appellant would not run its car at a speed inconsistent with the safety of members of the public whose rights thereon were equal to those of the appellant; that the error in his judgment that he had time to cross in safety does not necessarily amount to negligence.

As the car was coming towards him he could not estimate its speed, and he had the right to assume that it was not greater than was consistent with appellant's duty. He turned to cross to avoid a collision with the hack and car, which he deemed inevitable if he pursued his course north. To cross he had only twenty-five feet to go at farthest; when turning from his course to do so, according to his testimony, the car was from seventy-five to 100 feet from him; he was driving at the rate of about six miles an hour, and this would have placed him across the track in safety had appellant's car been propelled at an ordinary rate of speed, or at no greater rate than prescribed by the ordinance of the city.

We have therefore concluded that when the reciprocal rights and

duties of appellant and appellee are considered under the evidence in the light of the law governing it, that appellee was not guilty of contributory negligence as a matter of law; that it was a question for the jury, and that they were warranted under the evidence in finding that he was not guilty of any negligence proximately contributing to his injury.   Railway v. Starling, 16 Texas Civ. App., 365.

The judgment is affirmed.

*Affirmed.*