SAN ANTONIO TRACTION COMPANY v. LUCY M. HAINES.

Decided February 13, 1907.

**1.—Personal Injuries—Street Car—Speed—Evidence.**

Where, in a suit for personal injuries caused by being struck by a street car, the speed at which the car was going at the time plaintiff was struck was a material issue, and defendant's motorman in charge of the car at the time had testified that the car was running about seven or eight miles an hour and that this was three-fourths of the maximum speed at which the cars could be run, it was competent for plaintiff to prove that the maximum speed of said cars was twenty miles an hour, it having been shown that all the cars were capable of about the same speed.

**2.—Brief—Reference to Evidence.**

Where appellant's brief fails to indicate where in the stenographer's transcript the testimony objected to is to be found an assignment of error based thereon will not be considered.

**3.—Contributory Negligence—Evidence Considered.**

In a suit for personal injuries caused by being struck by a street car while crossing the track, evidence considered and held not to warrant a charge that plaintiff was guilty of contributory negligence as matter of law. Cases distinguished, International & G. N. Ry. Co. v. Edwards, 100 Texas, 22; Gulf

Vol. XLV. Civil—19.

C. & S. F. Ry. v. Matthews, 100 Texas, 63; International & G. N. Ry. Co. v. Ploeger, 16 Texas Ct. Rep., 183; Galveston, H. & S. A. Ry. Co. v. Ryon, 80 Texas, 59.

**4.—Street Cars—Right of Way—Degree of Care.**

Street cars. have no better right to the use of the streets on which their tracks are laid than pedestrians and the public generally. The degree of care which the law imposes on street car companies is ordinary care.

Appeal from the Forty-fifth District Court, Bexar County. Tried below before Hon. J. L. Camp.

*Ogden & Brooks, Walter P. Napier* and *W. H. Lipscomb,* for appellant.—That the court erred in admitting the testimony of W. H. Davis. Dimmitt v. Robbins, 74 Texas, 441.

If the plaintiff stepped on the street car track within three or four feet of a rapidly moving car, then she was, as a matter of law, guilty of negligence that contributed to her injury, and the defendant was entitled to a verdict, unless it discovered her peril in time to avoid injuring her after such discovery, no matter what negligence it may have been guilty of. International & G. N. Ry. v. Edwards, 100 Texas, 22; Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 59; Gulf, C. & S. F. Ry. v. Matthews, 100 Texas, 63; International & G. N. Ry. v. Ploeger, 16 Texas Ct. Rep., 183.

While the street car company has no right to the exclusive use of any part of the street, it has the paramount right to the use of that portion of the street upon which its track is laid, and it is the duty of persons traveling thereon to exercise care to avoid coming in contact with the car, and to yield the right of way in order to let cars pass. Galveston City Ry. v. Hewitt, 67 Texas, 480; San Antonio Street Ry. Co. v. Mechler, 87 Texas, 628; Nellis on Street Railways, sec. 272; Booth on Street Railways, sec. 303; Houston, E. & W. T. Ry. v. Runnels, 92 Texas, 307; Nellis on St. Ry. Accident Law, p. 272, note 59.

*T. J. Newton* and *Will A. Morris,* for appellee.

JAMES, Associate Justice.—An action for damages for personal injuries alleged to have been sustained by Mrs. Haines, by reason of being struck by one of appellant's cars. The negligence alleged, upon which the case was submitted to the jury, consisted, first, in the running of the car at an unlawful speed; second, discovered peril; and third, failure to keep a proper lookout. The court also submitted the issue of plaintiff's contributory negligence.

Appellant presents together assignments one to six, and under them three propositions affecting certain testimony: 1st. "Testimony as to the rate of speed at which other cars of appellant could be run, was irrelevant and incompetent." 2nd. "Testimony as to the rate of speed the witness had run other cars of appellant on another track and at another time, was irrelevant, immaterial and incompetent." 3d. "It is improper to elicit immaterial testimony from a witness on cross examination and then contradict him with other testimony equally immaterial, irrelevant and incompetent."

The circumstances giving occasion to these assignments are substantially as follows: De Solme, the motorman on the car which struck plaintiff, a witness for defendant, testified on his main examination that the car was running about seven or eight miles an hour. Upon cross examination he was asked, "These cars won't run over ten miles an hour will they?" He answered that he had never run over ten miles with one and had run them full speed. Question: "You run over Avenue C. over that asphalt street full speed, and you mean to tell the jury that car will not run over ten miles an hour going full speed?" He answered: "I don't think it will." Question: "You were running eight miles an hour and they won't run over ten miles, so you were running three-fourths of the speed anyhow, wasn't you, three-fourths as fast as they will go, wasn't you. That is a fact is it not?" The answer was "yes." Question: "You say you were running seven or eight, you swear positively you have not been able to run them over that, you never have seen one run over ten?" He answered: "I said I never saw one; that he wouldn't swear they didn't, but he didn't think any of them run over ten miles, they might, but ten miles an hour is going along pretty fast." Question: "That is as fast as you got them to go on that asphalt street on Avenue C.?" He answered: "I cut off, let them go." Question: "Cut off—throwed wide open?" Answer: "Yes, sir." Question: "You tell this jury that on that level track, that asphalt street, you can't run a car over ten miles an hour?" Answer: "It don't look to me they are going over ten miles an hour."

The assignments are all directed to testimony of a witness W. H. Davis, who was introduced by the plaintiff and who was allowed to answer questions as follows: "Have you ever tested the rate of speed that cars could be operated over the lines of defendant company?" Ans. "Yes, sir, I have." "State whether or not the cars belonging to the traction company can be run at a greater speed than ten miles an hour?" Ans. "Yes, sir, they do." "At what rate of speed can cars belonging to the San Antonio Traction Company be operated over its lines, if you know?" Ans. "Twenty miles an hour." The objections made on the trial to this testimony of Davis were that it was irrelevant and immaterial, unless confined to the particular car that struck plaintiff, and incompetent because he could only show what rate of speed the car that struck plaintiff could go. At the time the court acted upon this evidence, proof had been introduced to the effect that defendant had nothing but double motors in their service.

We think no valid objection was made to the testimony of Davis. The rate of speed at which the car was running just before it reached the point where plaintiff was struck, was a material issue, there being an ordinance of the city forbidding a greater speed than ten miles an hour. De Solme testified for defendant that he was going seven or eight miles an hour. Defendant had the right to test his knowledge and accuracy concerning this subject, and he was properly asked on cross-examination the questions above quoted, which he answered by stating to the effect that defendant's cars, so far as his knowledge went, could not be made to run more than ten miles an hour. His testimony indicated that he had experience generally over defendant's lines; and that his statement that the limit of speed of its cars was ten miles an hour had reference

to defendant's cars generally, and that he was not confining his statement to the particular car that he was operating when he struck plaintiff. His testimony in chief, as shown by his testimony on cross-examination, indicated that he had slowed down to what was three-fourths the maximum speed of defendant's cars. It seems to us that it was relevant, material and competent, in this situation, to show by qualified witnesses what three-fourths of the maximum speed would be, in order, not so much to contradict De Solme, as to explain, and enable the jury to understand, what his testimony really amounted to and to give it its proper weight. To view it otherwise would amount to denying plaintiff the benefit of what was derived from the cross-examination. Appellant's propositions seem to concede that the testimony would have been proper if it had been confined to the particular car. But De Solme's testimony was not confined to that car, but was that it was running three-fourth's of the speed limit of defendant's cars. See Gulf, C. & S. F. Ry. v. Matthews, 100 Texas, 63.

The seventh assignment of error complains of similar testimony given by the witness Halford. The brief does not refer us to where the testimony complained of is found in the stenographer's transcript.

Under the eighth assignment of error complaint is made of the refusal of a charge, by which the jury would have been told that if they believed that plaintiff stepped upon defendant's track not more than three or four feet in front of a rapidly moving car, and that the motorman did not discover her on the track until it was too late to stop the car and prevent injury to her, to find for defendant. The proposition advanced is that if she stepped on the track not more than three or four feet ahead of the rapidly approaching car, too late for the car to be stopped in time to save her from injury, she could not recover.

Here it becomes proper to state the circumstances of the accident. Commerce Street, along which the cars were operated, runs east and west. The place where plaintiff received her injury was at or near the corner of Colorado Street which intersects Commerce Street on the west of the block. Callaghan Street intersects the block on the east. Mrs. Haines intended to take the eastbound car. Her daughter's house is located on the north side of Commerce Street, the next house to the one on the corner of Colorado. The track here is a double one and she was hurt on the north track, which was about 12 feet from the curbing. She had only about twenty-five feet to go to get on the eastbound car, and in so doing her course was oblique in a southwesterly direction, with her face toward the car she was going to take, which was coming, and from the westbound car which was also coming. She testified that as she came out of the gate she looked up and down the street and saw the westbound car about near the middle of the second block from where she was. That she started walking in a southwesterly direction fast, as she always did in crossing streets, she had only twenty-five feet to go, and just as she was on the track she was struck by the westbound car. She had crossed the street many times with it nearer. That she always noticed particularly when crossing any street on account of her hearing.

Her daughter Mrs. Dudley testified that when plaintiff got out upon the sidewalk, she saw her turn and look up and down the street, and as she did, witness herself looked up the street from the porch and there

was no car in sight, and that from her porch she could see a block to Callaghan Street. That as plaintiff got to the first rail she heard something and turned and saw the car, and it was coming at such a fast rate of speed, she saw that her mother was in danger.

Biediger, a witness who lived on the opposite side of the street, testified that he first saw the mother and daughter standing on the gallery, that plaintiff walked to the gate and looked up and down the street, she seemed to be waiting for a car. This witness stated that the car was then 80 or 90 feet away at that time he guessed. At another place he testified the car was about 70 feet away when plaintiff stepped on the north rail; and that the car was traveling 12 or 15 miles an hour. Another witness, J. B. Smith, testified that the car was running between 12 and 15 miles an hour when plaintiff was struck. De Solme testified that he had slowed down, from which it would appear that he was going faster when more than a block away, if he was more than a block away when plaintiff started to cross the street as she and her daughter testified. Biediger testified that she was crossing the street in a southwesterly direction (the car that struck her was coming from the east) that as she stepped on the first rail the car was about 70 feet away, and that as she was about to step off the second rail the car struck her. She was hit as she was crossing. The witness Smith testified that she was going diagonally in a southwesterly direction and in this course was crossing the track at about an angle of 45 degrees and was near the second rail when hit. We quote this testimony to explain that it was not an undisputed fact, as some of the testimony went to show (that of De Solme the motorman), that after she got upon the track plaintiff remained in it and walked along it for some distance before she was struck. Mrs. Dudley also testified that her mother was not walking down the track, and illustrated how she walked across. Plaintiff stated substantially the same, and further testified that she was looking in the direction she was going, and was watching the eastbound car, the one she was going to take, which the witness Biediger stated was approaching about half a block away. Plaintiff was deaf, and used an ear trumpet at the trial. She testified that her hearing was not so bad, and that she did not have to use the trumpet all the time.

With these facts in the record we are unable to assent to the proposition, that plaintiff was guilty of contributory negligence as a matter of law, if she stepped upon the track when the approaching car was not more than three or four feet from her. Appellant cites decisions, which do not answer for the facts in this case. In International & G. N. R. R. Co. v. Edwards, 100 Texas, 22, the party admitted he had neither looked nor listened for the train. Here plaintiff had looked and had seen this car approaching, but a block and a half away, far enough off to warrant a person exercising ordinary care to assume that there was ample time for her to cross the track at a distance of only twenty-five feet, walking briskly, without being overtaken by that car, and in not paying any further attention to that car, in that brief time. The case of Gulf, C. & S. F. Ry. v. Mathews was where the party was using the track as a path. (100 Texas, 63.) Also the case of International & G. N. Ry. v. Ploeger, 16 Texas Ct. Rep., 183. Here plaintiff was in the act of crossing the track, at a place where she had the right to do so. The case of

Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 59, was one where the party went upon a railway track and lingered there until struck by an engine. Plaintiff according to her testimony looked and saw the position of this car. She had done the same thing before when the car was closer than it was when she says she saw it on this occasion. Whether she was deaf or not her conduct was a matter which could be resolved consistently with the care expected of an ordinarily careful person if the jury believed that the car was that distant when she started to cross the track to a place only twenty-five feet from where she was, and that she was walking briskly for this purpose, and that she was so walking and in the act of crossing the first track, when the car ran into her. We think the assignment should not be sustained.

The ninth assignment complains of the refusal of the following charge: "The court having given its main charge to the jury, and refused special charge No. 1, requested by the defendant, the defendant requested the court to charge the jury as follows: 'If you believe from the evidence that the plaintiff stepped on the defendant's track within three or four feet of a rapidly moving car, and that in so doing she was guilty of negligence, and if you further believe from the evidence that at that time the motorman was looking back, or that he did not discover that she was in peril until after she stepped on the track, then you will return a verdict for the defendant, no matter what negligence you may find the motorman was guilty of.'" Another charge requested by appellant was given, which was substantially the equivalent of the above.

Under the tenth appellant presents this single proposition: "The acts of the plaintiff in going upon the track without looking or listening after she left her gate, being negligence as a matter of law, it was error to submit the question of her negligence to the jury." This has been sufficiently discussed.

The eleventh assignment is as follows: "The court erred in giving special charge No. 2, requested by the plaintiff, which reads as follows: 'You are instructed that a street car company had no right to the exclusive use of that part of the street upon which its track is laid, but all persons have an equal right to use the same for travel (over) and across the street, and such persons so using that part of the track are lawfully there and the degree of diligence which the law imposes upon the street car company to prevent accident and injury to persons on and along its tracks, is ordinary care, which is that care which a man of ordinary prudence would use under like circumstances. This charge, although given you at the request of plaintiff, is a part of the law of the case, and you will be governed thereby.'" This charge expresses the law as it has been declared in this State. (San Antonio Rapid Transit Ry. v. Limburger, 88 Texas, 79; San Antonio St. Ry. v. Renken, 38 S. W. Rep., 829; San Antonio Traction Co. v. Upson, 71 S. W. Rep., 565; Dallas Con. Elec. St. Ry. v. Illo, 73 S. W. Rep., 1076; Galveston City Ry. v. Hewitt, 67 Texas, 473.)

The remaining assignments complain of the overruling of the motion for new trial. We dispose of them all by stating our conclusions of fact in accord with the verdict and which the testimony amply supports, as follows: Plaintiff was not guilty of contributory negligence; her in-

jury was caused by the negligence of defendant's employes, either in respect to not keeping a reasonable lookout, or in operating the car at a high and unlawful speed or both, or in not using the means at his command to avoid injuring plaintiff after observing her danger. Judgment affirmed.

*Affirmed.*

Writ of error refused.