## AUSTIN ELECTRIC RAILWAY COMPANY v. JOHN W. LANE.

Decided May 5, 1909.

**Street Railway—Passenger—Contributory Negligence.**

Evidence considered and held to establish contributory negligence on the part of plaintiff, injured by being struck by a street car. There were two tracks in the street, cars running east on the south one and west on the north. Plaintiff, a passenger, wishing to get off a car going west, rang for it to stop at G Street. In accordance with a rule with which he was familiar, it would stop on this signal at the further or west side of the crossing of G Street. He stepped from the car on the north side of the north track, while it was in motion, and just before it reached the east edge of G Street, and walked at once, across the track, in the rear of the car from which he had alighted, to the parallel track on the south of it, where he was struck by a car going east and hidden from his view by the car from which he had just got off. A peremptory instruction to find for the defendant should have been given, and a judgment in plaintiff's favor is reversed and rendered for the defendant.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

*Cochran & Penn,* for appellant.—It was shown by the uncontroverted evidence that plaintiff's injuries on account of which he sues in this case were directly and proximately contributed to by his own negligence in the respects alleged by defendant in its answer. International & G. N. R. R. Co. v. Edwards, 100 Texas, 22-25; Cowles v. Missouri, K. & T. Ry. Co. of Texas, 96 Texas, 24-30; Texas & N. O. Ry. Co. v. McDonald, 99 Texas, 213; Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 547.

*A. W. Bloor,* for appellee.—It was not shown by the uncontroverted evidence that plaintiff's injuries were directly and proximately contributed to by his own negligence, but there was a conflict in the testimony upon this issue. The burden was upon defendant to establish contributory negligence. And to authorize the court to withdraw that issue from the jury the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. The evidence in this case was such that the jury might conclude that plaintiff was not guilty of any act or omission which a person of ordinary care and prudence would not under like circumstances be guilty of. The court, therefore, properly submitted such issue to the jury, and did not err in refusing a new trial. Wallace v. Southern Cotton Oil Co., 91 Texas, 21; Lee v. International & G. N. Ry. Co., 89 Texas, 533; Domenico v. El Paso Electric Ry. Co., 90 S. W., 60; Taylor v. San Antonio & A. P. R. Co., 83 S. W., 738; McDaniel v. Staples, 113 S. W., 596; McGown v. International & G. N. R. Co., 85 Texas, 293.

KEY, Associate Justice.—This is a personal injury suit, which resulted in a verdict and judgment in favor of plaintiff for $750, and the defendant has appealed.

We sustain appellant's second assignment of error, which complains of the action of the court in refusing to give a requested instruction directing the jury to return a verdict for the defendant. We sustain that assignment for the reason, as contended on behalf of appellant, that it was shown by the uncontroverted evidence that the plaintiff was guilty of contributory negligence. The defendant filed a plea of contributory negligence, fully covering the facts developed by the testimony. The testimony relied on by the plaintiff bearing upon the question under consideration is as follows:

The plaintiff testified as a witness in his own behalf as follows: That on the night of March 19, 1908, he was a passenger on a westbound car of defendant on Sixth Street in the city of Austin, and that he was going to his boarding house, which was situated at the corner of Sixth Street and Guadalupe Street, being on the south side of Sixth Street and east of Guadalupe Street; that there were two tracks of defendant on said Sixth Street, situated about six feet apart; that before he reached Guadalupe Street he rang the bell twice, and that the car was slowing down when he got off the car; that he got off the car

just at the intersection of Guadalupe and Sixth Streets; that when he got off he walked right behind the car that he got off of, which was going west, and just as he walked behind and got a little away from it another car, going east on the other or south track, ran up and hit him; that he did not know of any warning that he had that that car was coming; that he did not see it nor hear it; that "I saw it before it hit me; I was right close up to the other car; I tried to get out of the way. Just as I went behind the car I got off of there was a flash of the other car right there at me coming on the south track. Just as I walked around going to my house there was a flash of light, and I threw up my hands like this, and this hand went on the side of the car and that hand must have struck the gate. I did not hear any bell ring; I think I was in a position to have heard it if they had rung the bell. I have good hearing. When I got off this car that was going west at this point it did not stand still; it was moving on, leaving me. I had hold of the handle-bar and just stepped down off of the car. I did not stop at all—I don't guess I did; I don't remember exactly, but I remember stepping off of the car just like this, and walking right straight in a bee-line from where I got off. I was looking in the direction that I was going. I had good eyesight; I saw the car when it was just coming up. It was so fast I could hardly tell you how close it was to me when I saw it. It was right there. I saw it maybe five feet away from me, or six feet, but I didn't have time to get out of the way. I had not quite gotten on the other track. I had not stepped on to the track that this eastbound car was on. I had just gotten behind the other car when I saw that flash of light. I tried to step back and protect myself, but I was not able to do so."

On cross-examination the plaintiff testified: "When I got to point where I stepped off I didn't step off on my right foot; I stepped off on my left foot. I was facing south, holding to both handle-bars. I stepped then on my left foot. Then I immediately started across the car track as soon as I got my balance. I did not stop at all. I didn't wait for anything. I did not look to see if there was any obstruction in my way. That other car was between me and the track. I neither stopped, nor looked, nor listened for any obstruction. The other car was right there at me and I started across the track.

"I knew at the time I got hurt, and had known for a long time prior thereto, that cars go west on this street only on the north track and that they go east only on the south track. I also knew that cars pass each other very frequently, at frequent intervals, going east and west on Sixth Street. That is, the cars go west on the north track frequently and east on the south track frequently. I also knew that it was the custom of the street-car company to stop its cars for the reception and discharge of passengers at the opposite or far side of street crossings. When I rang the bell on that car I knew it would, according to the custom of the car company, stop at the west side of Guadalupe Street for me to get off, but I didn't wait for it to get there and stop. When I got off of this car and started across the track I was making for my boarding house, straight across the street. I don't know exactly what particular point I was going to; I was going in the direction of my boarding house. I did not pick out the gate

when I started; I just went in that direction. As well as I remember, I didn't go diagonally but went straight across the street. I was within ten feet of Guadalupe Street when I stepped off this car. I was ten feet off of the street—right at the street. It was a fact that I know that I got off a little east of Guadalupe Street, within ten feet of the street. It is a fact that I did get off east of Guadalupe street. I was within ten feet of Guadalupe Street. I had not gotten to the east line of Guadalupe Street. I don't think foot passengers in that neighborhood ordinarily cross the street from corner to corner; they cross right straight across most of the time in that neighborhood. I know it is the general practice in Austin to cross from street corner to street corner; I knew that at the time."

"He further testified that on the next day he told Mr. Jones, president of the street-car company, at the time the settlement involved was effected, how the accident occurred, and that 'I told him I got off of the car before it stopped and started across the street and was immediately struck by the eastbound car.'

"The plaintiff further testified, on being recalled as a witness, as follows: "From the time I got off the car I was on until the time I was struck I didn't hear any gong or anything. The other car that I got off of was moving and made a racket, and I didn't hear anything at all except that. After I got off of that car, and while moving around it, I did not hear anything.' The plaintiff further testified on cross-examination: 'I stated yesterday when I got off of this car that I neither stopped, looked nor listened. I don't think I stopped, looked or listened, only just to get my ground and start on to my house. I stated just now, when asked if I heard any gong ringing, that the car that I got off of was making a racket as it moved off down the street. It obstructed my view down that way of anything coming up on the other track. I had not thought about whether the car that I got off of obstructed my view of any other car or buggy or horse that might be coming from the opposite direction on the other side. I didn't think about that. I didn't think to look ahead and see if there were any obstructions. It was dark, and I just got off of the car and started right across the street.'

"On redirect examination the plaintiff further testified as follows: 'I stated when I got off of the car I didn't stop, and stated that I didn't look and stated that I didn't listen. I do not mean by that that I shut my eyes and crossed the street blind. I did not look around for the car because the other car was there. My eyes and ears were opened so that I could see anything running into me—so I could see what was going on. I did not stop and say: "Well, now I must look and listen to see if anything is coming," but naturally a fellow will look out for himself. I was using my eyes. I could not have noticed the car if I had stopped to look because the other was between me and it. I could not see the light because the other car was throwing the light on the ground. My hearing was good, never had any trouble with it. I could hear the car gong when they rang it; I could hear those all right. When I said I didn't stop or look or listen, I meant that I just got off of the car like I would if I got off the car there to go around.'"

R. B. Colley, called as a witness on behalf of plaintiff, testified: That on the night that plaintiff received his injuries he was motorman in the employ of the defendant company and that on said night he was running a car west on Sixth Street of the city of Austin, going to put up his car, it being his last run, and that near the corner of Sixth and Guadalupe Streets he passed another car going east, and saw the car was stopping, and he slowed down, and just as the front end of his· car got to the back end of the other car he sounded his gong and "kinder" ·released his brakes, and then looked ahead and saw plaintiff lying on the track; that plaintiff was scrambling about; that plaintiff was on the south track when he first saw him and was trying to get up; that he scrambled across the street in front of his, the witness' car, and he stopped the car, stopping it just in time to avoid striking plaintiff. That this was between 11:40 and 11:45 at night. That it was an east and west car that he passed just before he saw plaintiff, and it was the last car on the east and west line going east that night. That is, the last eastbound car. That the other car had stopped as he passed it, and then, when the front end of his car had gotten to the back end of the other car the other car was still. That Lawrence was the conductor on the eastbound car which he met just before seeing plaintiff on the track, and that Atkinson was the motorman on said car.

"This witness further testified on cross-examination that he did not notice exactly how far the plaintiff was from the east side of Guadalupe Street when he saw him lying on the ground. That he didn't step it, but he was some little piece east of the corner, that he knew where the steps were in front of plaintiff's boarding house, and he was not right sure, but believed plaintiff was a little bit east of a line drawn out into the street from those steps. That he did not know the width of Guadalupe Street, but streets in Austin range from sixty to eighty feet in width. That the car·that he met of motorman Atkinson had a headlight on it and was burning; that the headlight cast a light ahead some little distance, of course, owing to the power. That generally people in Austin who are crossing streets cross from one sidewalk corner to the other sidewalk corner, and they did not ordinarily cross the streets between corners or between streets, so in operating street cars we have more reason to look out for people at· street crossings and intersections of streets than between streets. That the rule and custom of the defendant company was to stop the cars at the further side of a street crossing for passengers to get on and off. That a car going west on Sixth Street would stop at the west side of Guadalupe Street for a passenger to get off, and a car going east on Sixth Street would stop at the east side of Guadalupe Street for a passenger to get off. That there were printed signs in all cars at that time warning persons not to attempt to get off the car before it came to a stop. That the custom was then, when a passenger wanted to get off a car, for him to give a signal, ringing the side bell if he was in the car, or the overhead bell, if on the back platform, and the car would then stop at the next crossing. That if he were on the eastbound car, and as he came up saw the car stop at the west side of Guadalupe Street, he would naturally anticipate that people might have gotten off of that car and be

going across the street. That in meeting a car between streets or in the middle of a street he would not anticipate that people had gotten off the car and were crossing the street. That a motorman would anticipate that people had gotten off a car only when the car was stopped at the proper place on the crossing.

"On re-direct examination he testified: 'I slowed down in passing this east and westbound car that night, because I saw the car had stopped; I slowed down because I saw the car had stopped, and thought that people might be coming around behind the car. The car was not at a corner. I didn't notice it not being at the corner until after I had passed the car. The car had stopped, and it is a rule when you see a car stop to go slow by it—to slow down. We also slow down when we are passing each other. There is a rule to slow down when passing one another. The rule is to slow down in passing cars, but where it is stopping to receive or let off passengers, then the car is supposed to slow down so as to keep your car under such control that you can stop it, if necessary, if a passenger should come around it. We have these instructions from the office.'

"On re-cross-examination he further testified: 'If I am coming up to a car that is stopped I am to slow down and have my car under such control that I could stop it if necessary—so that I could stop it immediately; but if a car is moving along between streets I merely slow down to some extent. Where two cars are passing each other on a street, and neither one of them stopping, the motorman on neither car would anticipate that a person would get off the other moving car and undertake to get in front of the one he was on.'

"Plaintiff introduced in evidence copy of an ordinance of the city of Austin passed September 18, 1905, requiring that street cars in the city of Austin should be equipped with a gong or bell, capable of being heard at least three hundred feet, and that it should be the duty of the motorman or person in charge of said car to cause said gong or bell to be sounded at least twenty feet from and before crossing any street intersecting the street on which said car is running, and to continue sounding said gong or bell until said street should be crossed.

"The witness L. T. Oeding testified: That he was on an eastbound car of defendant on Sixth Street about 11:30 of the night that plaintiff was hurt; that he got on said car some distance west of Rio Grande Street, which was shown to be west of Guadalupe Street; that the conductor in charge of said car told him that it was the last eastbound car, and that said car did not stop between where he got on it and Congress Avenue, which was shown to be three blocks east of Guadalupe Street, and that said car in his opinion ran about fifteen miles an hour between the point where he got on it and Congress Avenue."

The foregoing is the substance of all the testimony bearing on the question of contributory negligence relied on by the plaintiff. There was other testimony presented by the defendant tending to sustain its contention of contributory negligence.

We are of opinion that this case falls within the rule announced and applied by the Supreme Court in International & G. N. R. R. Co. v. Edwards, 100 Texas, 22. In that case it was held, notwithstanding

the negligence of the defendant, that the plaintiff Edwards was guilty of contributory negligence in going upon a railroad crossing without looking or listening for an approaching train, which he could have discovered if he had attempted to do so. In this case, according to the plaintiff's own testimony, instead of waiting for the car on which he was traveling to stop at the usual place for him to alight, he got off while that car was in motion, and immediately passed around its rear end and practically upon the adjoining track, upon which he knew cars passed at frequent intervals coming from the opposite direction; and, notwithstanding such conditions and such knowledge, he neither stopped, looked nor listened in order to discover if a car was approaching, but attempted to go upon the adjoining track immediately in front of an approaching car, and was struck and injured. Such being the case, we think it must be held as matter of law that he was guilty of contributory negligence, and is not entitled to recover damages in this case.

The judgment of the trial court will be reversed and judgment here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.