## FERRELL et al. v. BEAUMONT TRACTION CO. (No. 286.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 8, 1917. On Rehearing, Nov. 30 and Dec. 11, 1918. Further Rehearing Denied Jan. 1, 1919.)

1. STREET RAILROADS ⊙—85(5)—USE OF TRACK BETWEEN CROSSINGS—RIGHTS OF RAILROAD AND OF PUBLIC.

While a street railroad does not have the exclusive right to use its tracks upon a city street, yet its rights to their use between crossings is so far superior as to require of travelers a higher degree of caution.

2. NEGLIGENCE ⊙—136(14) — DEGREE OF CARE —QUESTION FOR COURT.

It is always a question of law for the court to say whether or not any care is required under a given state of facts.

3. STREET RAILROADS ⊙—99(14)—COLLISION— CONTRIBUTORY NEGLIGENCE.

Where plaintiff at driver's invitation jumped upon the runboard of an automobile upon a city street between crossings, and before he could enter the automobile it was struck by a street car, which was in plain view, and plaintiff did not attempt to keep any lookout, he was guilty of contributory negligence.

4. STREET RAILROADS ⊙—114(21)—CONTRIBU-TORY NEGLIGENCE—MISTAKE OF JUDGMENT— EVIDENCE.

Evidence held to show that plaintiff's injury, resulting from his jumping upon the runboard of an automobile just before its collision with a street car, was caused by contributory negligence in not seeing the car, and not by mistake of judgment.

King, J., dissenting.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by A. Ferrell and another against the Beaumont Traction Company. Judgment for defendant, and plaintiffs appeal. Affirmed upon rehearing.

Smith & Crawford, of Beaumont, for appellants.

Orgain, Butler & Bolinger, of Beaumont, for appellee.

KING, J. This appeal is from a judgment in favor of appellee, based upon a verdict returned by the jury in obedience to a peremptory instruction from the court, who, by said instruction, held that as a matter of law the appellant, Leroy Ferrell, was guilty of contributory negligence.

On the morning of the 15th day of May, 1915, said appellant, who was then a boy 15 years old, suffered very painful injuries by being knocked from the running board of an automobile. He was one of a party of a Sunday school picnic crowd that was journeying to a point south of the city of Beaumont in what is known as hay wagons, going south on Park street, one of the principal streets in the city of Beaumont, one of the wagons preceding the other at a distance variously estimated at from 50 to 150 feet. Park street runs practically north and south, and is double-tracked, the east track being used by cars coming north into the city, and the west track being used by cars running south. These hay wagons had large flat beds about 8 feet in width, which were above and extended over the wheels of the wagons, and the beds of the two wagons were crowded with children sitting all around the edges thereof with their feet hanging off. The appellant Leroy Ferrell and others were sitting in the middle of the bed of the rear wagon. One of the defendant company's tracks comes into Park street over Emmett street from the east, south of the place of the accident. When these wagons were thus proceeding down Park street south, with the rear wagon running along with its east wheels about the center of the defendant's west track, a young man by the name of Richards, driving an automobile, overtook it and ran along slowly with it for some distance, the front wheels of his automobile running along to the east of the back part of the rear wheel of the wagon, which placed his automobile over near the west rail of the east street car track. It was testified that while the wagon and the automobile were traveling in this position, Richards invited some of the boys, including the plaintiff Leroy Ferrell, to get aboard his automobile, and three of the boys, including appellant, proceeded to do so. The appellant got off of the rear of the wagon and ran around the rear of the automobile, and was on the running board on the left-hand side of the automobile, and was opening the door, when one of the defendant's street cars, meeting the automobile, collided with it.

Appellant assigns as error the action of the trial court in peremptorily instructing the jury to return a verdict for the defendant, thereby holding that the testimony showed as a matter of law that appellant was guilty of contributory negligence.

Richards, who was driving the car, testified that he had gone down Pearl street to Austin street, and crossed over Austin onto Park street, and was going on down Park street, and overtook the picnic wagons about the middle of the distance between the two streets, and that he knew all the people on the wagons, and slowed up to about the same rate of speed the wagon was going, and the boys began to jump off and jump on the car, and two of them ran around back of the car, and that at that time the street car was at the corner of Park and Emmett, taking on and letting off passengers, and that he thought he had plenty of room to get through, but that after he started around, he saw he could not pick up speed enough to get by the wagon before the car got to him, and began to back up to get away, when the rear wheel of the wagon hit his front hub cap, which threw him a little towards the track; that the motorman was looking back and hollering and laughing at the girls; that he was going just a fraction faster than the wagon when he first started to go around, but when the street car hit the car, the wagon was pulling out and leaving him; that he was passing on the left-hand side of the wagon, which was going south; that he was going south, the street car coming north; that it was customary to pass on the left-hand side; that there was a traffic regulation to this effect; that the wagon was going pretty straight down the street as he started by it, and that as he started by, the wagon cut into the east side of the street towards him; that at the time the street car struck the automobile, he could not have gotten closer to the wagon without colliding with the wagon; that the street car caught the end of his bumper and pressed the side of his left front wheel, and caught onto his fender and dragged his car backwards; that it knocked the bumper off the car, and bent the fender back, and hung onto the fender; that when the street car left Park and Emmett, it was picking up just at an ordinary gait, like it always ran; that they just threw it open and came on like it was going down the track, and got in about 10 feet of the automobile before the motorman looked around and began to apply the brakes; that he was too near to stop; that the car was within about 6 or 10 feet from him before he noticed any change in the speed; that it was 11½ feet from the west curb of the street to the west rail of the west track; that the wagon

was straddling the west rail of the west track; that the track was 5 feet 2 inches from the outside rail to outside measured over all; that his car was about 68 or 70 inches wide over all, from the edge of one fender to the other; that he was going three or four miles an hour at the time; that it was about 24 feet from the west curb of the street to the west rail of the east track; that at the time he began to back his car, after deciding that he could not pass the wagon in safety, the street car was close onto half a block from him; that that was when he first discovered that he could not make it pass the wagon; that Ferrell had just got on the running board when the street car hit him; that the boy tried to get on his car just at the time he started to drop back.

We have not given this witness' testimony as to the negligence of the motorman running the street car. The evidence of all the witnesses testifying shows that the motorman was not keeping a lookout, but had partly turned around, and was looking at the front wagon, which had just passed.

Appellant Leroy Ferrell's testimony was as follows:

"My name is Leroy Ferrell, and I am the boy who was injured. I am the son of Mr. A. Ferrell. I am 17 years old now, and was 15 at the time of my injury. My birthday is the 9th of January, and on the 9th of January, 1915, I was 15 years old. The date of this accident was May 15th. On the morning this happened I was going to a picnic with the Baptist Sunday school at Spindle Top Springs. Yes, sir; a lot of us boys and girls belonging to the Sunday school were going to a picnic. We were going on a hay wagon. I don't know how many there were on the wagon. There was a tarpaulin spread over the wagon, and I think there was hay under it; it was hard as a board. It was called a hay wagon. There were three of the large wagons. There were two at this place; one went about half an hour before the other two. I had got to this point when Frank Richards came up and asked us where we were going, and I told him I was going to a picnic at Spindle Top Springs, and he asked me did I want to go with him. I told him I would if he didn't object, and he said come on, and I got off the wagon to get in his car, and I didn't notice the street car coming, and just about the time I got off the wagon and stepped on the running board, the street car struck the automobile and knocked me off. The wagon was going out Park street, toward Spindle Top Springs. That is south. The automobile was also going south. When I got off the wagon to get on the automobile, the back of the hood of the automobile was just about even with the back of the wagon. The automobile was on the east side of the wagon. I had been sitting in the center of the wagon, on the inside; they were lined up around the wagon, and there wasn't room for me on the outside, and so I sat in the center with another boy, up in the middle of the bed. It was just a straight platform bed. I was sitting flat down. I was facing toward the front of the wagon. I got off the wagon on the side next to the automobile; there was a couple of boys jumped off, and that left me space to get out, that is, they moved over, or got off so I could get off, and I jumped off on the ground and ran around the automobile and got on the automobile. I jumped off within a foot or two of the back end of the wagon; it would be along-side the back wheel. The platform extended over the wheel. It was not in my way. In a foot or two of the back corner of the wagon is where I jumped off. I went around the rear of the automobile to the left-hand side, going south, which would be the east side of the automobile. There was no one ahead of me going around there. I just stepped on the running board; I just stepped there, and I threw my hand on the door to open it, and was in the act of opening it, when I was hit. I had not got the door open, and could not have consumed more than a second after I got on the running board. I did not know the street car was coming. I did not hear any sound of any gong or anything of the kind. The noises that were going on were the children yelling, hollering, and talking, and the noise of the rumble of the wagon. The automobile was making the noise that an engine will make when it is in motion. I didn't see the street car at all. With reference to whether I knew whether the automobile was clear of the track or was far enough to clear, or anything about that, I supposed it would clear.

"There is a brick pavement there where that accident occurred. The top of the automobile was up, but there were no side curtains up. I think the back curtain was down. * * * I jumped on that running board about the middle. I approached it going pretty fast; I think I stepped up on it, instead of jumping up on it. As to whether it was sowly or quickly done, going around behind the automobile and getting on that running board, it was as quick as I could do it.

"After I turned the corner of that automobile, I was running. I don't suppose I had any time to see whether the car was in conflict or would collide with the street car. No, sir; it did not occur to me that they were going to collide, until the street car hit, because I never saw the street car. I believe when I got on the running board I was free from the street car and the street car lines, if it hadn't struck the automobile."

Appellant testified on cross-examination as follows:

"As to whether or not at that time I stopped and thought about whether or not it was in the clear and whether I recollect that I then thought it was in the clear, will say, I supposed then that it was in the clear. I never stopped to think about it then. It did not occur to me whether or not the street car would be there. As to whether it occurred to me to look to see whether the car was in the clear, I didn't have time to look, in running around there. As to whether the location of the street car and automobile didn't enter my mind at that time, will say I didn't know anything about the street car, didn't think about it, and didn't look for it.

"When I jumped off, I jumped off between the automobile and the wagon, and went around the automobile, and climbed up on the side, and

about that time the street car struck. I knew there was a street car track there. I didn't notice that it was a double track. As to whether I knew there were street cars passing there both ways, I guess I knew they passed both ways. As to whether, if I had stopped to think about it, I would have known a car might hit that automobile just at the time I got around there, will say, I didn't think anything unusual was going to happen. No, sir; I didn't look for that car at all; I didn't listen for the car; it didn't occur to my mind at all that that car was coming. I was running around that automobile to get on it; I ran out on the street car track and stepped up on the car, and about that time the street car hit us. I suppose if I had looked I would have seen it. If I had had it on my mind, I could have heard it; it was not on my mind. I didn't think an automobile would go on the track if a car was coming. As to whether I looked to see, I took it for granted the car track was clear. I didn't think anything about the situation or observe the situation. No, sir; before I jumped off that wagon, I didn't look for a car or think about one; when I was running around to get on the car I didn't think about it, and just at the time I stepped up on that car it hit us. Had I done anything to see if that car was coming, I could have got away. I don't know of anything that was there to keep me from seeing it. It was just about a second between the time I got on the automobile until it was struck."

"The time consumed in running around there, from the time I got off the wagon until I was on the running board, would not be over a couple of seconds. I went around there immediately. My statement about the back curtain being down was just my opinion. I didn't look to see. I lived in Beaumont 5 years prior to the time I moved to Houston. I was about the town a good deal. I think that was my first time on Park street. I had been about the town a good deal, and had seen the street cars about town. I said yesterday that I knew there was a street car track on Park street. As to whether I knew cars passed on Park street in both directions, in some places they have belts; I didn't know but what there was one there. I don't know where there is a street car belt in Beaumont. As to whether I knew in Beaumont at that time they passed in both directions, will say I wasn't sure of it. I guess I had that information if I had stopped there to think and waited there to see. I knew cars passed on that street car track one way or the other. As to whether when I passed over there I looked for a car in either direction, will say, in fact, I didn't know I was on a street car track. There was nothing to keep me from seeing it, only going around the car. I didn't notice where the wagon was in reference to the street car track. In fact, I didn't notice the street car track at all. As to whether I didn't pay any attention to the situation, but just jumped off and run on regardless of any traffic on the street or street car track or anything else, will say I had to suppose it was clear, or the automobile wouldn't have been going around. At that time, though, I didn't think about it. I expect if there had been any noise I would have known there was traffic; if there had been any warnings, I would have known there

was traffic; certainly I was relying on those warnings strictly. As to whether I was thinking about those warnings, will say, certainly; I always think about warnings. Yes, sir; I said yesterday that I didn't hear it, and that had I been listening I could have heard it. I went around there without paying any attention to the street car track or anything of the kind, any further than the attention that is going on in the human body all the time. There was no conscious effort on my part at that time to see what was coming. Had I seen that car, had I looked, and been aware of its approach, I would not have tried to get on the automobile. If I had looked, I could not have told whether or not it was exactly in the path of the street car; the corner of it hit, and it was so close that hardly any one could have told it was going to hit. Yes, sir; I said yesterday that the street car struck the automobile at the time I got on. Had I looked and seen it, I certainly would not have gotten on. I had run around to the east side of the automobile, and one side of the automobile at the time I got on it was right on that east track so as to be struck by that car. I mean, if the car had been so it would pass the automobile, I would have been free. As a matter of fact, it seems as though I was not free."

Without discussing the evidence at any length, we have reached the conclusion that the state of the whole evidence was not such as to permit only one inference to be drawn therefrom by ordinary minds. The rule, according to our understanding, is that, to constitute contributory negligence as a matter of law, the acts of the person, as constituting such negligence, must be such as to allow but one inference to be drawn therefrom by ordinary minds, or his acts must be in violation of law, such as a statute or a city ordinance.

Appellee insists that this case comes within the rule announced in Edwards v. Railway, 100 Tex. 23, 93 S. W. 106, and in Railway Co. v. Lane, 55 Tex. Civ. App. 577, 120 S. W. 1011. We think the facts and circumstances surrounding this case are quite dissimilar to those in the cases cited, and is easily distinguishable from them.

A street railway does not have the exclusive and paramount use of its tracks in city streets, but has reciprocal rights with that of the general public.

The picnic wagons and the automobile were upon Park street on the morning of the accident, and had equal rights to the occupancy of the street with the street car. This is not a case of a person attempting to cross a railroad track or a street car track, but the appellant was lawfully traveling on the street along which appellee's tracks ran, and had been so traveling for a considerable distance. An automobile approached from the rear and attempted to pass the wagon, according to an ordinance of the city of Beaumont, leaving the wagon to its right. The testimony discloses an invitation to appellant to ride in the automobile. Can it be

207 S.W.—42

said that reasonable minds would not differ as to the right of appellant to assume, under all of the circumstances, that it would be safe to board the auto, notwithstanding the fact that he did not stop, look, and listen to ascertain whether there was danger from an approaching street car? It might not require a great degree of mental effort to impress a person that it would not be dangerous to do what appellant attempted to do. People of cities are guided largely in their manner of using the streets upon which cars are run by the known regulations and customs governing the operation of such railways, and they become so accustomed to these regulations that they obey them many times subconsciously. The electric street car is usually provided with a bell or gong, to be sounded as a warning of its approach. A man is placed in the front of the car to keep a vigilant watch ahead to give warning of its approach, keep his car under control, and stop it when there is apparent danger ahead. The actions of the appellant in attempting to board the automobile must be judged in the light of such regulations and customs, in order to determine the question of contributory negligence. The jury, knowing that the automobile had equal rights upon the street with the street car, could have found that the appellant had the right to expect of the operators of the street car care proportionate to the danger of the operation of the car, and, further, that he rightfully assumed that, according to the customs and regulations of the street car company, based upon its equal rights with other vehicles, the street car would not head into an automobile which it was meeting. We do not think that the conduct of persons, based upon the idea that the usual safeguards would be observed by those handling street cars, and which become hazardous only by the negligence of the operators to take precaution against injury, should be treated as contributory negligence, defeating the right of recovery for injury inflicted through the negligence of the servants of said company. We think it was the province of the jury to determine these questions.

We are unwilling to say that the evidence in this case does not warrant the conclusion that Leroy Ferrell was not guilty of contributory negligence, it being the function of the jury to say what precautions were called for by the particular situation and circumstances surrounding his actions. While Ferrell's testimony is not contradicted, we think that the entire testimony presented issues for the jury to determine, taking into consideration all of the surrounding circumstances. We are unable to find where it has ever been held in Texas that a mere failure to stop, look, and listen before approaching a railroad track, or to go upon a track knowing of the approach of a car, was negligence per se.

In the Edwards Case, supra, the evidence showed, without contradiction, that the plaintiff walked along the road at night, approaching the railroad obliquely, with his side toward the track until he came near the crossing, when he turned with the road across the track, and was struck as he reached the center thereof. The train was visible by its electric headlight upon a straight track for a mile or more before it reached the crossing, and the noise of its motion was plainly audible. Plaintiff admitted that before stepping on the track he neither looked nor listened for the train, although he was familiar with the crossing, and knew of the frequent passing of trains, and that he could have seen and heard it had he done so. He relied alone upon the fact that the whistle was not blown nor the bell rung, as required by statute, claiming that he was listening for those signals, and that he did not look for the train, or pay any attention to the noise it made, because he did not hear the signal. There it was shown that he well knew he was going into a place of danger, but relied wholly upon the operatives of the engine to give the signal for the crossing, as required by law.

We think it could be said by the jury in this case, under the testimony, that there was nothing apparent to indicate to appellant Ferrell that he was even going into a place of danger; that he did not know that the automobile was in conflict with the street car line, and that, if the automobile was in conflict with the street car line, he might have concluded that the automobile would clear the street car line.

In the Lane Case, supra, Lane stepped in front of a moving street car, whose track was not obstructed until Lane obstructed it, just a moment before the collision. The testimony showed that Lane knew that a street car might be passing, and that it would have nothing to indicate to it that it could not pass with safety at its ordinary speed, while appellant, in the instant case, knew that the automobile had been occupying the same position along the track for some distance. He knew it was broad daylight, and it could be found that he had a right to believe that, even though the automobile was on the track, the motorman would see it, and have his car under control and avoid a collision. Lane knew that a street car, unwarned of danger, might come upon him should he step onto the track, and took no precaution whatever, while Ferrell saw a situation that was not necessarily dangerous until made so by the negligence of the motorman driving the street car, and that the auto was upon the street lawfully, in open view of the operatives of the car had they been looking. He did not know of the approach of the street car, nor that the automobile did not clear, nor that the motorman was not keeping a lookout. Lane saw no object lawfully

on the track, which he had a right to assume would not be run into by a street car, while Ferrell attempted to take passage on an automobile that was lawfully on the street car track, and the jury could have found that at the time there was nothing apparent that a street car would be negligently run into it. Lane knew that he was getting onto the track, while the jury might have concluded from the testimony that Ferrell did not know that the automobile was on the track, and that it was impossible to tell from his position whether the automobile was clear of the track. Lane was not invited to come onto the track, while appellant was invited to take passage on the auto, and the jury could have concluded, under the testimony, that he had a right to believe that the auto was not in danger of the street car. In the Lane Case, there was no negligence whatever shown upon the part of the operatives of the street car, and the evidence is conclusive that but for Lane's negligence the injury would not have occurred. It becomes convincing to the ordinary mind, upon reading the evidence as to the conduct of Lane, that he was guilty of negligence, while in the case at bar, the evidence is not conclusive, but is such that reasonable minds might differ.

In the case of San Antonio Traction Co. v. Levyson, 52 Tex. Civ. App. 122, 113 S. W. 569, the court said:

"If it be conceded, as appellant contends, that deceased stepped immediately in front of a moving car, it does not necessarily follow that he was guilty of negligence per se. This depends upon the attending facts and circumstances. It has been held, even in a case where one stepped on a railway track immediately in front of a string of moving railway cars and was killed by being run over, that the jury were warranted in finding he was not guilty of contributory negligence in view of the facts and circumstances. G., H. & S. A. Ry. v. Conuteson, 51 Tex. Civ. App. 1, 111 S. W. 188. The cases of Texarkana & Ft. S. Ry. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 565, and St. L. & S. F. Ry. v. Summers, 51 Tex Civ. App. 133, 111 S. W. 211, are of like import. The law upon a question of this character is much more favorable to one who goes upon a street railway track in front of a moving car than it is to one who steps in front of a steam engine. In the former case, the rights and duties of the parties are reciprocal. In the latter the right of the railroad to the use of its track is ex necessitate superior to the individual, and, if he interferes with this right by going on a railway track in front of a moving train, he ordinarily becomes a trespasser and guilty of negligence as a matter of law. A street railway, as its very name imports, is ordinarily constructed and maintained in streets of cities which are intended for and used by the general public, and this use by the public of the streets is not subordinate to the use of a street car company to run its cars along it. In the exercise of the right to run its cars along a public street, the company must regard the rights of the public in its use and operate them with due regard to the right of individuals. Ordinarily, a member of the public will not be guilty of negligence when he is in the legitimate exercise of the use of a public street, even though it be that part upon which a street railway is constructed over which the company propels its cars. As it necessarily takes on and discharges its passengers in the streets over which it runs its cars, it is its duty to especially exercise ordinary care to prevent injuring those who are on the street and crossing its track for the purpose of taking passage."

It cannot be said that when a person is on a street car track in the exercise of his lawful right and simply makes a mistake of judgment, having a reason for believing himself safe, that it makes his action negligence per se, and therefore guilty of contributory negligence as a matter of law. The exercise of a person's judgment, although in error, does not make his action negligence as a matter of law. If there is any circumstance or the existence of any condition that would authorize a reasonably prudent person to believe that he was acting wisely, or his acts under such condition would be questionable in the mind of an ordinarily prudent person, they could not be said to constitute contributory negligence as a matter of law.

It was said in Railway Co. v. Huebner, 42 S. W. 1021, that a failure of one to look and listen while traveling in a wagon slowly for a distance of 50 feet in approaching a crossing, when by looking or listening at any time an approaching train could have been discovered, was not contributory negligence as a matter of law.

In the case of Adams v. Railway Co., 164 S. W. 853, it was held that plaintiff was not guilty of contributory negligence as a matter of law, the facts being that plaintiff had been traveling along the railroad 50 or 60 feet from the track for three or four miles in an automobile. The road turned across the track at a point about 50 or 60 feet from the track. Adams testified that he did not look or listen for the cars between that point and the track, and had he looked he could have seen the train coming for a mile or two miles either way. The explanation offered for his not looking or listening was that he relied on the usual signals for the approach of a train, and, further, that he was noticing a team that was becoming frightened at his car on the other side of the track, and was engaged also in controlling his machine. He stopped his car on the railroad track, watching the frightened team. The court cites the Lee Case, 89 Tex. 588, 36 S. W. 63, and distinguishes the case from the Edwards Case, supra. We cite, further, Galveston Electric Co. v. Antonini, 152 S. W. 841; San Antonio Co. v. Haines, 45 Tex. Civ. App. 289, 100 S. W. 788; San Antonio Traction Co. v. Levyson, 52 Tex. Civ. App. 122, 113 S. W. 569; Railway Co. v. Mechler, 87 Tex.

631, 30 S. W. 899; San Antonio Traction Co. v. Upson, 31 Tex. Civ. App. 50, 71 S. W. 565; City Railway Co. v. Thompson, 20 Tex. Civ. App. 16, 47 S. W. 1038.

We have reached the conclusion that the facts in this case are such as require the submission of the question of contributory negligence of appellant to the jury, and therefore reverse and remand the case.

HIGHTOWER, C. J., did not sit in this case.

## On Rehearing.

BROOKE, J. When this case was presented to this court the Chief Justice, L. B. HIGHTOWER, Jr., was disqualified to sit in the case, having been of counsel in same. Associate Justice KING delivered an opinion in which the case was reversed and remanded. Upon mature investigation and upon motion for a rehearing, this member of the court came to the conclusion that the opinion heretofore handed down by Mr. Justice KING was erroneous. Thereupon the Governor appointed Mr. I. W. LAWHON to sit as a member of this court in deciding said cause. Upon deliberation by the entire court as constituted above, it was the opinion of the court that the motion for a rehearing in this cause should be granted, and that the judgment of the lower court should be affirmed. Therefore, in deference to the fact that Justice KING has dissented from the majority of the court, this opinion has been prepared as the judgment of the court in this cause.

This appeal, therefore, is from a judgment in favor of appellee, based upon a verdict returned by the jury in obedience to a peremptory instruction from the court, who by said instruction held that as a matter of law the appellant Leroy Ferrell was guilty of contributory negligence. The facts seem to be as follows: On the morning of the 15th day of May, 1915, appellant, who was then a boy 15 years old, suffered injury by being knocked from the running board of an automobile. He was one of a party of a Sunday school picnic crowd that was journeying to a point south of the city of Beaumont in what is known as hay wagons, going south on Park street, one of the principal streets in the city of Beaumont, one of the wagons preceding the other at a distance variously estimated at from 50 to 100 feet. Park street runs practically north and south, and a double track is laid upon the same, the east track being used by cars coming north into the city, and the west track being used by cars running south. These hay wagons had large flat beds about 8 feet in width, which were above and extended over the wheels of the wagon, and the beds of the two wagons were crowded with children, sitting all around the edges thereof with their feet hanging off. The appellant Leroy Ferrell and others were sitting in the middle of the bed of the rear wagon. One of defendant company's tracks comes into Park street over Emmett street from the east, south of the place of the accident. When these wagons were thus proceeding down Park street with the rear wagon running along with its two wheels about the center of defendant's west track, a young man by the name of Richards, driving an automobile, overtook the wagon, and ran along slowly with it for some distance, the front wheels of his automobile running along to the east of the back part of the rear wheel of the wagon, which placed his automobile over near the west rail of the east street car track. It was testified that while the wagon and the automobile were traveling in this position Richards invited some of the boys, including the plaintiff Leroy Ferrell, to get aboard his automobile, and three of the boys, including appellant, proceeded to do so. Appellant got off of the rear of the wagon and ran around to the rear of the automobile, and was on the running board on the left-hand side of the automobile, and was opening the door, when one of defendant's street cars, meeting the automobile, collided with it.

Appellants assign as error the action of the trial court in peremptorily instructing the jury to return a verdict for the defendant, thereby holding that the testimony showed as a matter of law that appellant was guilty of contributory negligence. Richards, who was driving the car, testified that he had gone down Park street to Austin street and crossed over Austin to Park street, and was going on down Park street, and overtook the picnic wagons about the middle of the distance between the two streets, and that he knew all the people on the two wagons, and slowed up to about the same rate of speed the wagon was going, and the boys began to jump off and jump on the car, and two of them ran around back of the car, and that at that time the street car was at the corner of Park and Emmett, taking on and letting off passengers, and that he thought he had plenty of room to get through, but that after he started around he saw he could not pick up speed enough to get by the wagon before the car got to him, and began to back up to get away, when the rear wheel of the wagon hit his front hub cap, which threw him a little towards the track; that the motorman was looking back and hollering and laughing at the girls; that he was going just a fraction faster than the wagon when he first started to go around, but when the street car hit the car, the wagon was pulling out and leaving him; that he was passing on the left-hand side of the wagon, which was going south; that he was going south, the street car coming north; that it was customary to pass on the left-hand side; that there was a traffic regulation to this effect; that the wagon

was going pretty straight down the street as he started by it, and that as he started by the wagon cut into the east side of the street towards him; that at the time the street car struck the automobile, he could not have gotten closer to the wagon without colliding with the wagon; that the street car caught the end of his bumper and pressed the side of his left front wheel, and caught onto his fender and dragged his car backwards; that it knocked the bumper off the car, and bent the fender back and hung onto the fender; that when the street car left Park and Emmett, it was picking up just at an ordinary gait, like it always ran; that they just threw it open and came on like it was going down the track, and got in about 10 feet of the automobile before the motorman looked around and began to apply the brakes; that he was too near to stop; that the car was within about 6 or 10 feet from him before he noticed any change in the speed; that it was 11½ feet from the west curb of the street to the west rail of the west track; that the wagon was straddling the west rail of the west track; that the track was 5 feet 2 inches from the outside rail to outside, measured over all; that his car was about 68 to 70 inches wide over all, from the edge of one fender to the other; that he was going three or four miles an hour at the time; that it was about 24 feet from the west curb of the street to the west rail of the east track; that at the time he began to back his car, after deciding that he could not pass the wagon in safety, the street car was close onto half a block from him; that that was when he first discovered that he could not make it pass the wagon; that Ferrell had just got on the running board when the street car hit him; that the boy tried to get on his car just at the time he started to drop back.

Appellant Leroy Ferrell's testimony was as follows:

"My name is Leroy Ferrell, and I am the boy who was injured. I am the son of Mr. A. Ferrell. I am 17 years old now, and was 15 at the time of my injury. My birthday is the 9th of January, and on the 9th of January, 1915, I was 15 years old. The date of this accident was May 15th. On the morning this happened I was going to a picnic with the Baptist Sunday school at Spindle Top Springs. Yes, sir; a lot of us boys and girls belonging to the Sunday school were going to a picnic. We were going on a hay wagon. I don't know how many there were on the wagon. There was a tarpaulin spread over the wagon, and I think there was hay under it; it was hard as a board. It was called a hay wagon. There were three of the large wagons. There were two at this place; one went about half an hour before the other two. I had got to this point when Frank Richards came up and asked us where we were going, and I told him I was going to a picnic at Spindle Top Springs, and he asked me did I want to go with him. I told him I would if he didn't object, and he said come on, and I got

off the wagon to get in his car, and I didn't notice the street car coming, and just about the time I got off the wagon and stepped on the running board, the street car struck the automobile and knocked me off. The wagon was going out Park street, toward Spindle Top Springs. That is south. The automobile was also going south. When I got off the wagon to get on the automobile, the back of the hood of the automobile was just about even with the back of the wagon. I had been sitting in the center of the wagon, on the inside; they were lined up around the wagon, and there wasn't room for me on the outside, and so I sat in the center with another boy, up in the middle of the bed. It was just a straight platform bed. I was sitting flat down. I was facing toward the front of the wagon. I got off the wagon on the side next to the automobile; there was a couple of boys jumped off, and that let me space to get out; that is, they moved over, or got off so I could get out, and I jumped off on the ground and ran around the automobile and got on the automobile. I jumped off within a foot or two of the back end of the wagon; it would be alongside the back wheel. The platform extended over the wheel. It was not in my way. In a foot or two of the back corner of the wagon is where I jumped off. I went around the rear of the automobile to the left-hand side, going south, which would be the east side of the automobile. There was no one ahead of me going around there. I just stepped on the running board; I just stepped there, and I threw my hand on the door to open it, and was in the act of opening it when I was hit. I had not got the door open, and could not have consumed more than a second after I got on the running board. I did not know the street car was coming. I did not hear any sound of any gong or anything of the kind. The noises that were going on were the children yelling, hollering, and talking, and the noise of the rumble of the wagon. The automobile was making the noise that an engine will make when it is in motion. I didn't see the street car at all. With reference to whether I knew whether the automobile was clear of the track or was far enough to clear, or anything about that, I supposed it would clear.

"There is a brick pavement there where that accident occurred. The top of the automobile was up, but there were no side curtains up. I think the back curtain was down. * * * I jumped on that running board about the middle. I approached it going pretty fast; I think I stepped up on it, instead of jumping up on it. As to whether it was slowly or quickly done, going around behind the automobile and getting on that running board, it was as quick as I could do it.

"After I turned the corner of that automobile, I was running. I don't suppose I had any time to see whether the car was in conflict or would collide with the street car. No, sir; it did not occur to me that they were going to collide, until the street car hit, because I never saw the street car. I believe when I got on the running board I was free from the street car and the street car lines, if it hadn't struck the automobile."

On cross-examination appellant testified:

"As to whether or not at that time I stopped and thought about whether or not it was in

the clear and whether I recollect that I then thought it was in the clear, will say, I supposed then that it was in the clear. I never stopped to think about it then. It did not occur to me whether or not the street car would be there. As to whether it occurred to me to look to see whether the car was in the clear, I didn't have time to look, in running around there. As to whether the location of the street car and automobile didn't enter my mind at that time, will say I didn't know anything about the street car, didn't think about it, and didn't look for it.

"When I jumped off, I jumped off between the automobile and the wagon, and went around the automobile, and climbed up on the side, and about that time the street car struck. I knew there was a street car track there. I didn't notice that it was a double track. As to whether I knew there were street cars passing there both ways, I guess I knew they passed both ways. As to whether, if I had stopped to think about it, I would have known a car might hit that automobile just at the time I got around there, will say, I didn't think anything unusual was going to happen. No, sir; I didn't look for that car at all; I didn't listen for the car; it didn't occur to my mind at all that the car was coming. I was running around that automobile to get on it; I ran out on the street car track and stepped up on the car, and about that time the street car hit us. I suppose if I had looked I would have seen it. If I had had it on my mind I. could have heard it; it was not on my mind. I didn't think anything about the situation or observe the situation. No, sir; before I jumped off that wagon, I didn't look for a car or think about one; when I was running around to get on the car I didn't think about it, and just at the time I stepped up on that car it hit us. Had I done anything to see if that car was coming, I could have got away. I don't know of anything that was there to keep me from seeing it. It was just about a second between the time I got on the automobile until it was struck.

"The time consumed in running around there, from the time I got off the wagon until I was on the running board, would not be over a couple of seconds. I went around there immediately. My statement about the back curtain being down was just my opinion. I didn't look to see. I lived in Beaumont 5 years prior to the time I moved to Houston. I was about the town a good deal. I think that was my first time on Park street. I had been about the town a good deal, and had seen the street cars about town. I said yesterday that I knew there was a street car track on Park street. As to whether I knew cars passed on Park street in both directions, in some places they have belts; I didn't know but what there was one there. I don't know where there is a street car belt in Beaumont. As to whether I knew in Beaumont at that time they passed in both directions, will say I wasn't sure of it. I guess I had that information if I had stopped there to think and waited there to see. I knew cars passed on that street car track one way or the other. As to whether when I passed over there I looked for a car in either direction, will say, in fact, I didn't know I was on a street car track. There was nothing to keep me from seeing it, only going around the car. I didn't notice where the wagon was in reference to the street car track. In fact, I

didn't notice the street car track at all. As to whether I didn't pay any attention to the situation, but just jumped off and run on regardless of any traffic on the street or street car track or anything else, will say I had to suppose it was clear, or the automobile wouldn't have been going around. At that time, though, I didn't think about it. I expect if there had been any noise I would have known there was traffic; if there had been any warnings, I would have known there was traffic; certainly I was relying on those warnings strictly. As to whether I was thinking about those warnings, will say, certainly; I always think about warnings. Yes, sir; I said yesterday that I didn't hear it, and that had I been listening I could have heard it. I went around there without paying any attention to the street car track or anything of the kind, any further than the attention that is going on in the human body all the time. There was no conscious effort on my part at that time to see what was coming. Had I seen that car, had I looked and been aware of its approach, I would not have tried to get on the automobile. If I had looked, I could not have told whether or not it was exactly in the path of the street car; the corner of it hit, and it was so close that hardly any one could have told it was going to hit. Yes, sir; I said yesterday that the street car struck the automobile at the time I got on. Had I looked and seen it, I certainly would not have gotten on. I had run around to the east side of the automobile, and one side of the automobile at the time I got on it was right on that east track so as to be struck by that car. I mean, if the car had been so it would pass the automobile, I would have been free. As a matter of fact, it seems as though I was not free."

Complaint is made, among other things, that the Court of Civil Appeals erred in reversing and remanding this cause for a new trial for the reason that the appellants in the court below did not file and present to the court at a proper time objections to the court's charge to the jury, and should not be heard to complain on appeal of the action of the court in instructing a verdict for the defendant. Appellants' bill of exception, as shown by the record, shows that the only action taken by the appellants in the trial court in reference to the court's charge was to except generally to the action of the court in granting special charge No. 1, requested by the defendant, which was in its nature a peremptory instruction.

Again complaint is made that the court erred in reversing and remanding said cause for the reason that no motion for a new trial was made in the trial court, and that, except there be a motion for a new trial made, except in cases tried before the court without a jury, an appeal will not be entertained. There seems to have been no motion for a new trial filed in this cause.

In the opinion heretofore rendered by a member of this court, the cause was reversed and remanded, and complaint is made of the holding that the undisputed evidence in the case did not show that the plaintiff Leroy

Ferrell was not guilty of contributory negligence, as a matter of law, and holding that whether or not he was guilty of contributory negligence under the evidence was a question of fact for the jury to determine.

Richards testified:

"I was going down Park street and came to these wagons, about the middle of the distance between the two streets."

[1] In the original opinion written by Justice KING, he says that a street railway company does not have the exclusive and paramount use of its track in city streets, but has reciprocal rights with that of the public. This statement in our judgment, is, to say the least, an inaccurate expression of the relationship between street railway cars and other users of the street. Booth on Street Railways, § 304, p. 490, states the rule as follows:

"As already stated, as a general rule, especially between street crossings, cars have a right of way superior to that of other vehicles and pedestrians, this preferential right to be exercised in a reasonable and prudent manner. But this rule does not apply to the crossing of tracks at street intersections. There the car has a right to cross and must cross the street; and vehicles and foot passengers have a right to cross and must cross the railway track. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other, and in such a careful manner as not unreasonably to abridge or interfere with the right of the other. This equality of right, however, does not absolve one who is about to cross the tracks from the duty of taking proper precautions to avoid accidents."

Again (section 317, p. 518) this author says:

"It is the duty of other travelers and of those in charge of street cars to be on the lookout for each other, the degree of caution required of the former being increased by the fact that, except at street crossings, the latter have the right of way. Although the company is bound to exercise care and diligence to avoid collisions and accidents, this does not relieve all other persons who are using the streets from the duty of using proper care and watchfulness to avoid injury. The degree of care and prudence required of one traveling upon the street where a street railway has been rightfully laid down is greater than that demanded of him by the law upon other streets, in proportion as the risks are increased by the operation of the railway; and, as the company is entitled to the unrestricted use of its rails for the passage of its cars within the limit of speed which the law allows, the driver of any other vehicle, being unnecessarily upon the track, is bound to exercise greater care than when elsewhere in the street, to see that the approaching car is not impeded. Ordinarily error of judgment or inattention to one's surroundings, if it directly contributed to an injury, will bar a recovery."

In the case of Austin Dam & S. Ry. Co. v. Goldstein, 18 Tex. Civ. App. 704, 45 S. W. 600, it is stated:

"We have not been able to find any case reported in this state where this identical question has been passed on as applied to the operation of street railways; but, upon principle, we think that, by analogy, that class of cases that lays down the rule upon this question as to injuries sustained by a person when upon a railway track which is operated by steam is applicable. As great a degree of care and vigilance by one entering upon or crossing the tracks of a street railway, in operation upon a street of a city, would not in all cases be required as in the case of one entering upon an ordinary railway operated by steam; and the facts connected with his entering upon the tracks of a street railway may not subject him to the charge of contributory negligence when a like state of facts might be evidence of his want of care in going upon the tracks of a railway operated by steam; for a pedestrian, under such circumstances, could assume that, owing to the continuous use of the street by the public, those operating the street cars would exercise much vigilance to prevent collisions, and could consider that the readiness with which such cars can be controlled and stopped would justify him in taking the chances of safely crossing over the track, when a similar effort to cross the tracks of a railway operated by steam might be regarded as negligence. Lynam v. Railway Co., 114 Mass. 87.

"What is required in this, as in other cases of this class, is the exercise of ordinary care; and, when it is once ascertained that one entering upon the track of a street railway is lacking in caution and diligence, he should be held to the same responsibility as exists in other cases where the plaintiff may be guilty of contributory negligence. The principle of law which is applicable to a case where one, by his negligence, places himself in a position of peril upon a railway track applies to a case like this. In either case it is his negligent conduct that has contributed to his injury, and, such being the case, he is not permitted to recover, unless his perilous situation is discovered in time to prevent running him down. The fact that the plaintiff was privileged to use the street, and that, in the exercise of this right, he was not required to observe the same degree of care and watchfulness that would be required in a case where he was entering upon the track of a railway operated by steam, would not lessen the degree of responsibility that attaches to his negligent conduct in exposing himself to danger, if it is clear that he was guilty of such conduct. In either case it is his negligent conduct that exposes him to peril." Citizens' Ry. Co. v. Holmes, 19 Tex. Civ. App. 266, 46 S. W. 116.

[2, 3] We are of the opinion that the evidence, as above set out, was such as permits only one inference to be drawn therefrom by ordinary minds.

In the case of Butler v. Rockland, T. & C. St. Ry. Co., 99 Me. 157, 58 Atl. 778, 105 Am. St. Rep. 267, which has been cited by the courts of this state with approval, there is a statement of the law of what care is required of one going on a street railway track, this statement of the law being, as we believe, in accord with sound reason, and in ac-

cord with the holding of our own Supreme Court.

"While the rule that a traveler must look and listen before passing over a railroad crossing has been held not applicable to street railroads, * * * still it is necessary that a traveler approaching a street railroad crossing is bound to exercise some care to avoid danger of collision. He must exercise ordinary care, the care of an ordinarily prudent man, in view of all the existing conditions. He must take into account the probability of cars being near at the time, and the opportunities for observing them. He must have regard to his own speed, and must take some notice of the apparent speed of the approaching car, if seen. It is not necessarily negligence for a traveler to cross a track in front of an approaching car, even if he had misjudged its distance and speed. * * * Whether a traveler in such a case is negligent depends upon the facts in the case. But he must exercise due care and judgment about it. He cannot sit under cover, and not look, or, if he looks, not see, a car plainly before his eyes, and have no care whatever, and then say he has fulfilled the measure of the law. * * * And, in any event, the defendant had the right to run cars when he chose, and it was the duty of the plaintiff to exercise some care to look out for them. He could not be entirely inattentive."

As set out in the case of Edwards v. Railway, 100 Tex. 23, 93 S. W. 106, our Supreme Court has said that:

One "cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the * * * attitude of the plaintiff when he claims that he was not bound to look out for himself until the statutory signals were given. His claim could not be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving signals binding on the defendant."

Under the facts of the instant case, the plaintiff made no effort to ascertain the situation, and states that, had he used any effort at all, either by looking or listening or by the use of any other precaution, he would not have been injured; that he relied upon other parties strictly, although he made no conscious effort to do that. In our judgment, it is always a question of law for the court to say whether or not any care is required under a given state of facts. The young man who was injured in this case had not become a passenger in the automobile. He had simply gotten upon the running board. Had he been a passenger in the car, an occupant of the car, he would not have been injured, and we understand the law to be that, even though one is an occupant of a car driven by another, yet he must exercise due care for his own safety. The plaintiff, according to his own statement, said:

"Had I done anything to see if that car was coming, I could have gotten out of the way."

The courts have held that the occupant of a car, who is not the driver of it, is under the obligation of exercising some care, and a failure to do so would be contributory negligence.

In the case of Lyons v. Phillips, 196 S. W. 995, which is a decision by the Texarkana Court of Civil Appeals, a suit by the occupant of a car other than the driver, which was struck at a railroad crossing for damages, wherein there was a recovery against the railway company and appeal by it, in reversing it, the court used the following language:

"But John F. Collins was the owner of and was operating the automobile, and Phillips, the deceased, was riding merely as the guest of Collins. And the negligence of John F. Collins may not be imputed, as a matter of law, to the deceased, Phillips. * * * And the want of ordinary care on the part of the deceased, riding with another as his mere guest, would be measured by whether he failed in his duty to keep a lookout and to warn his companion, operating the automobile, when he discovered the approach of the train. * * * There is no direct evidence indicating the precautions taken by the deceased. The circumstances arising out of the physical facts immediately preceding the collision alone speak upon the question of contributory negligence of the deceased. Those circumstances do not speak with sufficient weight to conclusively determine the question as a matter of law."

In the case of Lyon v. Phillips, supra, the holding is straight out on the proposition that, while the negligence of the driver of the car would not be imputed to the guest in the car, but the contributory negligence would be measured by whether he failed in his duty to keep a lookout and to warn his companion operating the automobile. In the Phillips Case there was no direct evidence. If the deceased had not been killed, but had lived and testified and stated as the plaintiff in the present case did, that he did not look, that he did not listen, that he did not have the situation in mind, and that "had I done anything to see if that car was coming I could have gotten away," the court would have promptly held that he was guilty of contributory negligence as a matter of law.

If a mere guest in a car approaching a railroad track is required to exercise some care in knowing whether or not the track could be approached and crossed in safety, it seems to our mind to follow that one who jumps off of a moving wagon on a paved street where there are two street car tracks, even though it be at the invitation of a driver of an automobile, is bound to exercise some care to see whether or not he can go onto a street car track with safety to himself.

The Supreme Court of this state, in the case of Sabine & East Texas Ry. Co. v. Dean, 76 Tex. 73, 13 S. W. 45, speaks as follows:

"Gordon, a witness for plaintiffs, testified: 'I saw Mr. Dean when he was struck. He came out of the file room; just as he got on the rail

the cars struck him. Two cars passed over him. Mr. Dean came out of the file room, going toward the mill across the track, when the train struck him. Mr. Dean's business called him back and forward across the track; other men cross it also; they have to use it to get to the mill. It is commonly used by the men passing backward and forward. Mr. Dean was coming right straight across the track. He could have seen the train if he had looked up the track after he got out of the house. The cars struck him just as he got to the fireman's rail—that is, the rail nearest the file room; the cars struck him just as he got his foot across the rail. He was struck by the body of the car on his shoulder. I don't know whether or not he had both feet over the rail. The cars were very close to him when he got on the track. He could have seen the cars from the file room door if he had looked up. He was not looking that way. He was looking toward the mill.'

"This evidence is not contradicted. But one conclusion can be drawn from it, and that is that when there was nothing to prevent his seeing his danger, he heedlessly stepped upon the track at the very moment of the collision.

"It may be conceded that the manner of propelling the cars was, under the circumstances, an act of negligence upon the part of the defendant, and yet it must be held that the deceased exercised no care, and that his own want of it was the immediate cause of his injury.

"There is nothing in the record to indicate that after it became evident that he was going to place himself in a position of danger, it would have been possible for the defendant, by the use of any degree of skill or watchfulness, or by the use of any known appliances, to have stopped the cars in time to have saved him.

"The fact that on account of the noise of the mill he could not hear the approach of the cars cannot be held to excuse him from the duty of using his eyes to see them. If anything, it emphasized that duty.

"We think the defense of contributory negligence was sustained by the evidence without there being anything to the contrary."

This opinion was followed in the case of Railway Co. v. Trochta, 181 S. W. 764, and other cases in this state. The holding is to the same effect in the case of St. Louis, Brownsville & Mexican Ry. Co. v. Paine, 188 S. W. 1034.

Measuring the case at bar by the Edwards Case, we find that the plaintiff in the present case knew as much as the plaintiff in the Edwards Case. Edwards admitted that before stepping on the track he neither looked nor listened for a train. Ferrell, in the present case, stated, "I didn't think about it (the street cars), and didn't look for it." In the Edwards Case, it seems that he was familiar with the crossing, and knew of the frequent passing of trains, and that he could have seen and heard it had he looked. In the present case plaintiff testified that he knew there was a street car track there; that he guessed he knew cars passed both ways; that he ran out on the street car track and stepped on the car; that he could

have heard it had he listened; that had he looked he would have been aware of the approach of the car; that had he looked and seen it he would not have gotten on; that had he done anything to see if that car was coming he could have gotten away. In the present case plaintiff, while relying upon others, did not use any sense of his own to know of the signals, or to know of the approach of the train, either by looking or listening, but relied upon others wholly, without any conscious effort on his part to protect him from injury. Plaintiff's own statement is to the effect that he made no conscious effort to determine these facts. He did not look to see whether the automobile was in conflict. The automobile could have been squarely in front of the street car instead of in conflict with the approaching car, and it would have made no difference to plaintiff, because, to use his own words:

"I didn't know anything about the street cars, didn't think about it, and didn't look for it."

[4] In the opinion of Justice KING, the following language is used:

"It cannot be said that, when a person is on a street car track in the exercise of his lawful right, and simply makes a mistake of judgment, having a reason for believing himself safe, it makes his action negligence per se, and therefore guilty of contributory negligence as a matter of law."

As applying to the facts in this case, there is nothing, in our judgment, to justify a statement to the effect that there was a mistake of judgment on the part of Leroy Ferrell, because he exercised no judgment. He simply acted upon an impulse without using his judgment in the slightest degree, or doing anything to ascertain the situation.

Again, the writer of that opinion used the following language:

"The exercise of a person's judgment, although in error, does not make his action negligence as a matter of law."

This, in our judgment, is beyond the facts. There is nothing in the present case that indicates that the injured party exercised any judgment or any faculty of his to determine the situation prior to the time of making an effort to get upon the automobile.

Therefore, it is the opinion of the court that the rehearing should be granted, and that the judgment of the trial court be in all things affirmed. It is so ordered.

HIGHTOWER, C. J., did not sit in this case.

KING, J. (dissenting). It is my opinion that this court was in error in granting the motion for rehearing in this cause, and in affirming the judgment of the lower court, and I therefore dissent from its action in so

doing. My original opinion filed in this case presents my views as to the disposition of same.

---

⬚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes